**Leslie LUNDELL, Relator,**

v.

**Honorable J.F. CLAWSON, Respondent.**

**No. 14480.**

Court of Appeals of Texas,
Austin.

Sept. 25, 1985.

Rehearings Denied Oct. 8 and
Oct. 11, 1985.

Susan Rose, Nicolas Serna, Legal Aid Society of Cent. Tex., Belton, for relator.

Carol E. Prater, Temple, for real party in interest, Barbara Lundell Johnson.

Before POWERS, EARL W. SMITH and CARROLL, JJ.

POWERS, Justice.

Relator Leslie Lundell petitions this Court for a writ of mandamus, directing the Honorable J.F. Clawson, judge of the trial court, to take certain actions in a child-custody dispute between Lundell and his former wife, Barbara Lundell Johnson. Tex.Rev.Civ.Stat.Ann. art. 1824 (Supp. 1985). Specifically, Lundell requests that we order the trial court to: (1) vacate its orders entered previously in the cause; (2) dismiss Johnson's cross action affecting the parent-child relationship; and (3) issue a writ of habeas corpus directing that Johnson return to Lundell a minor child of his marriage to Johnson. We will conditionally grant the writ of mandamus.

### THE CONTROVERSY

The relevant facts are undisputed. Lundell and Johnson were divorced in the State of Minnesota on October 4, 1979. At the time, both Lundell and Johnson resided in Minnesota with their two minor children. The Minnesota decree granted Johnson custody of the two children.

In 1983, Johnson determined to move from Minnesota to Texas. In May of that year, she applied to the Minnesota trial court for approval of her taking the children with her to Texas. Lundell failed to appear and on May 26, 1983 the trial court granted Johnson permission to take the children to Texas, subject to Lundell's right to an annual two-week visitation period. In June 1983, Johnson moved to Texas and left the two children with Lundell for such visitation.

On July 1, 1983, without returning the children at the end of the two-week visitation period, Lundell petitioned the Minnesota trial court to modify the original award of custody to Johnson. In an interim order obtained by Johnson, the court ordered Lundell to deliver the children to Johnson, which he did.

On final hearing, the Minnesota trial court awarded Lundell custody of the older of the two children, thereby modifying the 1979 decree, but ordered that custody of the younger child remain in Johnson, affirming that part of the original decree. Johnson and Lundell each appealed from that part of the judgment with which they were dissatisfied. The Minnesota Court of Appeals, to which such appeal was taken, ordered on January 22, 1985 that Lundell be awarded custody of *both* children. Neither Lundell nor Johnson appealed from the appellate court judgment and it became final.

Although Johnson did not appeal the appellate judgment of January 22, 1985, only shortly thereafter, on March 4, 1985, she filed a new suit in the Minnesota trial court requesting a modification of the custody order so recently decreed by the Minnesota Court of Appeals. In this new trial-court proceeding, Lundell filed a motion for enforcement of the recent appellate court order, requesting that Johnson be ordered to deliver possession of the children to him. On March 22, the trial court denied Johnson's petition for modification of the custody arrangement ordered by the Minnesota appellate court and granted Lundell's motion, ordering that Johnson deliver the children to him. These orders by the trial court were affirmed by the Minnesota Court of Appeals, on April 4, 1985, in an appeal taken to that court by Johnson.

Immediately thereafter, on April 9, 1985, Lundell filed in Judge Clawson's court, in Texas, a petition for writ of habeas corpus, compelling Johnson to surrender to him possession of the younger child. (The older child is in Lundell's possession with Johnson's consent.) In a counterclaim in that habeas corpus proceeding, Johnson re-

quested that Judge Clawson assume jurisdiction of the issue of the younger child's custody and that he order, after final hearing, a modification of the Minnesota decrees by giving Johnson custody of that child. Johnson also requested a temporary restraining order and a temporary injunction maintaining her possession of the child *pendente lite.*

The temporary restraining order was awarded and the matter came on for hearing on Johnson's request for a temporary injunction and Lundell's prayer for habeas corpus relief. In the hearing, Lundell introduced in evidence exemplified copies of the pertinent Minnesota court decrees and orders, under which he possessed a legal right to immediate possession of the younger child. The trial court denied Lundell's petition for habeas corpus relief and granted the temporary injunction requested by Johnson, maintaining her possession of the child, as "managing conservator" until final hearing. There has been no final hearing on Johnson's suit to modify the Minnesota custody decree.

From these actions of the trial court, Lundell applied to this Court for writ of mandamus, requesting the forms of relief enumerated above. Curiously, while Lundell's application has been pending in this Court, and while her own suit to modify the Minnesota decrees is pending in Judge Clawson's court, Johnson filed in the Minnesota trial court, on July 8, 1985, yet another suit to modify the custody arrangement last decreed by the courts of that State.

We turn therefore to the proper application of the law to the undisputed facts as we have summarized them.

## HOLDINGS AND DISCUSSION

### I.

Texas has adopted the Uniform Child Custody Jurisdiction Act, Tex.Fam.Code Ann. § 11.51, *et seq.* (Supp.1985), effective September 1, 1983. The statute is designed to effectuate fundamental public policies and resolve previous unsatisfactory conditions relative to questions of jurisdiction and full faith and credit in interstate child-custody disputes (§ 11.51). The same purposes underlie the Parental Kidnapping Prevention Act of 1980, 28 U.S.C.A. § 1738A (West Supp.1985).

■ As pointed out in *Rush v. Stansbury,* 668 S.W.2d 690, 691 (Tex.1984), it is possible under both statutes for a Texas court and the court of a sister State to have concurrent jurisdiction of the same child-custody question. In the present case, for example, the younger child had resided more than six months with Johnson in Texas at the time the present action was brought, apparently making Texas the "home state" of that child, and giving the Texas court subject-matter jurisdiction of the child's status. Tex.Fam.Code Ann., *supra,* §§ 11.52(5), 11.53. Conversely, the Minnesota courts had undisputed jurisdiction of the subject matter at the time of the initial custody determination made in the 1979 divorce decree, and under the laws of that State and the United States, that court's subject-matter jurisdiction was *continuing.* Minn.Stat.Ann. § 518A.03 (West 1985); 28 U.S.C.A. § 1738A(d). As we shall see, however, the uniform act also provides for an orchestration of jurisdiction in such cases.

Lundell's application for habeas corpus relief was determinable under § 14.10 of the Texas Family Code. *Greene v. Schuble,* 654 S.W.2d 436 (Tex.1983). While § 14.10 contemplates habeas corpus relief both where there *is* and *is not* an existing custody order, we need consider only the former circumstance.

Subsection (a) of § 14.10 provides that the trial court "shall compel return of the child to the relator if and only if it finds that the relator is presently entitled to possession by virtue of the court order." It is unquestionable here that under the Minnesota decrees Lundell is presently entitled to possession of the younger child. Moreover, his right is immediately and automatically enforceable "upon proof of the bare legal right to possession." *Schoenfeld v.*

*Onion,* 647 S.W.2d 954, 955 (Tex.1983); *see also Greene v. Schuble, supra.*

Subsection (b) of § 14.10 contemplates the possibility that one parent may file in the other's habeas corpus proceeding an action or motion to modify the existing custody order. Johnson filed such an action. When this occurs, subsection (b) directs that "[t]he court shall disregard" the action "unless it finds that: ... (2) the child has not been in the relator's possession and control for at least 6 months immediately preceding the filing of the petition for the writ." In the present case, the younger child had not been in Lundell's possession for the preceding six months. Therefore, the trial court was not free to "disregard" Johnson's action to modify custody, under § 14.10(b)(2), but this provision of the Texas Family Code may not be construed as authorizing the trial court to modify, even temporarily, the custody decrees of the Minnesota courts.

Sections 11.63 and 11.64(a) of the Texas Family Code require enforcement of an existing child-custody decree, rendered by the court of a sister state; and even if a Texas court has jurisdiction of the parties and the subject matter, it may not exercise that jurisdiction to modify the existing custody decree unless "it appears ... that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this Act or has declined to assume jurisdiction to modify the decree." *See Rush v. Stansbury, supra.* Minnesota and Texas have substantially the same jurisdictional prerequisites under the uniform act adopted by both States. Tex.Fam.Code Ann. § 11.53; Minn.Stat.Ann. 518A.03, *supra.* Thus, the exercise of jurisdiction by a Texas court to modify the Minnesota decrees depends upon whether the courts rendering those decrees have since lost or declined jurisdiction to modify them.

Therefore, when the trial court heard Johnson's application for temporary orders and Lundell's petition for habeas corpus, it operated under the following statutory provisions:

1. The court was not free to "disregard" Johnson's application for temporary orders because the child had not been in Lundell's possession for the six months immediately preceding. Tex.Fam.Code Ann., *supra,* § 14.10(b)(2).

2. The court was required to "recognize and enforce" the Minnesota decrees *unless* it appeared to the court that the Minnesota courts had lost or declined jurisdiction to modify them. Tex.Fam.Code Ann., *supra,* §§ 11.63, 11.64(a).

Considering these statutory provisions, the trial court concluded that it was not required to "recognize and enforce" the Minnesota decrees because the courts that rendered them had lost or declined jurisdiction to modify them; hence, the court was free to consider Johnson's application for temporary orders and adjudicate a custody arrangement, *pendente lite,* which differed from that mandated by the Minnesota decrees. We conclude to the contrary.

■ Johnson contends the Minnesota courts lost or declined jurisdiction to modify their custody decrees by reason of the 1983 trial-court orders wherein the court: (1) ordered that she be permitted to take the children with her when she changed her residence to Texas; and (2) ordered Lundell to deliver the children to her so that she might take them to Texas as permitted by the court. Her theory is that a court loses or declines jurisdiction to modify a child-custody decree when it so "allows" the child or children to leave the State wherein the court sits. Johnson cites no authority for her theory, and we have found none. *See also* Annot., 96 A.L.R.3rd 968, 992 (1979). Nothing in either order of the Minnesota court suggests that the court contemplated a loss or rejection of jurisdiction by reason of the relief ordered therein.

In our view, Johnson's theory is erroneous for several reasons. It is initially apparent that the theory confuses subject-matter and *in personam* jurisdiction. In § 11.53(c) of the Texas Family Code, for example, and in Subd. 3 of the Minnesota version of the uniform act, it is provided

that "[p]hysical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody." *See also* § 11.61 of the Texas Family Code, providing a means for the court to obtain *in personam* jurisdiction of the parties and children in controversies about the subject matter of child custody.

In addition, it appears to us erroneous to conclude that by an *exercise* of its subject-matter jurisdiction, in ordering that Johnson be permitted to take the children to Texas, and in enforcing that order by another, the Minnesota court "lost" or "declined" subject-matter jurisdiction in consequence. We conclude, to the contrary, that the subsequent exercise of subject-matter jurisdiction by the Minnesota courts—as late as April 1985, the same month the Texas proceedings commenced—shows affirmatively that the courts of Minnesota had *not* "declined" jurisdiction; and, even if those courts had "lost" their jurisdiction by reason of the 1983 orders, they had nevertheless resumed their jurisdiction in 1985 well *before* Johnson invoked any jurisdiction which a Texas court might have to modify the custody decrees.

In any event, it was Johnson's burden to show the circumstances from which one might conclude that the Minnesota courts had "lost" jurisdiction after the initial custody determination in 1979, or that the Minnesota court making that determination had "declined" to exercise its jurisdiction to modify it. Beyond referring to the 1983 orders, Johnson has not suggested any possible basis for either legal conclusion.

We hold the 1983 orders do not have the legal effect for which Johnson contends. Consequently, the Texas trial court, *on the record we now review*, would not be authorized to modify the Minnesota decree on the ground that the Minnesota courts had lost or declined jurisdiction.

## II.

The trial court stated in its judgment another possible statutory ground upon which might rest its refusal of Lundell's habeas corpus petition and its tempo-rary orders placing the younger child in Johnson's custody. The trial court found that its orders were necessitated by an immediate and serious question concerning the welfare of the younger child.

In habeas corpus proceedings under § 14.10 of the Texas Family Code, even if the relator is entitled to immediate possession of the child, pursuant to an existing custody order, the court is authorized to "issue any appropriate temporary order if there is a serious immediate question concerning the welfare of the child." Tex. Fam.Code Ann., *supra*, § 14.10(c). The circumstances contemplated by this subsection are evidently the "dire emergency" referred to in *Schoenfeld v. Onion, supra*, as an exception to the "automatic, immediate and ministerial" enforcement to which a sister-state custody decree is ordinarily entitled in habeas corpus proceedings under § 14.10. Even without the qualifying word "dire," the word "emergency" would appear to imply an unexpected crisis demanding immediate action by the court to protect the child from physical or emotional harm, irrespective of other considerations which must be suspended until the emergency abates. *See, e.g., Hui-Mei Wise v. Yates,* 639 S.W.2d 460, 461 (Tex.1982) ("[N]o allegations that the children are in danger of physical or emotional harm.").

We find in the present record no evidence of such emergency circumstances. And it appears from the record that the trial court denied Lundell's petition for habeas corpus chiefly on the non-critical ground that the child himself desired to remain with his mother. The court, among other statements, gave its opinion that the child "is fairly mature for his age, and he seems to think he knows ... what is in his long-range best interest." It may indeed be in the child's best interest to stay with his mother and the court below may be correct in its determination in that regard, but under the law the determination was beyond the power of the trial court to make, for it is a determination that only a Minnesota court may make in the circumstanc-

es shown heretofore in this case. *Schoenfeld v. Onion, supra.*

### III.

 A complicating factor in the present original proceeding is raised by the record before us. We will hold that the trial court erred in denying Lundell's petition for habeas corpus relief, for he was entitled to immediate and automatic enforcement of the Minnesota decrees vesting him with the legal right of possession of the younger child. Similarly, we will hold that the trial court erred in issuing contrary orders, effective *pendente lite,* which gave Johnson the legal right of possession and "managing conservator" and Lundell the right of visitation as "possessory conservator."

But the record reveals that Johnson's action for modification of the Minnesota decrees has not been finally adjudicated in the Texas trial court. The trial court, under the Texas Family Code, has jurisdiction to modify the Minnesota decrees if the courts which entered them have lost or declined jurisdiction. Johnson has alleged that no other court has continuing jurisdiction of the subject matter and this allegation has not been finally adjudicated. She *may,* on final hearing, be able to show that the Minnesota courts have lost or declined jurisdiction for some reason *apart* from the 1983 orders she has urged here, and we will not prejudge her claim when the trial court has not yet adjudicated it.

### IV.

Accordingly, we hold as follows:

1. The last judgment of the Minnesota appellate court was entitled to full faith and credit; and the Texas trial court erred in refusing to enforce it by habeas corpus, for Lundell was entitled to automatic, immediate, and ministerial enforcement thereof. Tex.Fam.Code Ann., *supra,* §§ 11.63, 11.64; *Schoenfeld v. Onion, supra.* We assume that the trial court will vacate its order denying Lundell's petition for habeas corpus relief; and, that the trial court will issue the writ requested by Lundell. A writ of mandamus will issue from this Court only if the trial court declines to take such action.

2. The temporary orders issued by the Texas trial court, awarding Johnson temporary custody as "managing conservator," are inconsistent with the habeas corpus relief to which Lundell was immediately and automatically entitled. *Hui-Mei Wise v. Yates, supra.* We assume that the trial court will vacate these orders and a writ of mandamus will issue from this Court only if the trial court declines to take such action.

3. Lundell's application for mandamus is denied to the extent he requests this Court to order Judge Clawson to dismiss Johnson's suit for modification of the Minnesota decrees, for Johnson may, on final hearing, show that the court which entered those decrees has since lost or declined jurisdiction of the subject matter for reasons apart from the 1983 orders.

4. The matter of costs and attorney's fees, and an award thereof, shall be reserved for Judge Clawson's determination after final hearing on Johnson's suit. Tex. Fam.Code Ann., *supra,* § 11.18.