**In the Interest of S___ A___ V___ and K___ E___ V___, Children.**

No. 07–89–0307–CV.

Court of Appeals of Texas, Amarillo.

Aug. 6, 1990.

Appellee's First Motion for Rehearing Granted in Part and Overruled in Part Oct. 19, 1990.

Appellee's Second Motion for Rehearing and Appellant's First Motion for Rehearing Denied Nov. 16, 1990.

Ronald E. Walker, Jr., Amarillo and John J. Sampson, Austin, for appellant.

Garner, Stone & Lovell, Nancy J. Stone and Joe Lovell, Amarillo, for appellee.

Before REYNOLDS, C.J., and BOYD and POFF, JJ.

BOYD, Justice.

This is an interstate child custody case. Appellant T___ R___ V___ brings this appeal from an order of the trial court modifying an existing custody determination by a Minnesota court. The Texas order modified previous child support provisions, terminated the existing joint managing conservatorship of the children, and appointed appellee N___ D___ R___ as sole managing conservator of the minor children S___ A___ V___ and K___ E___ V___. It also altered appellant's access times with those children. We reverse the trial court judgment and dismiss this cause for lack of jurisdiction.

Because it is dispositive of the case, we will discuss only appellant's third point in which he contends the Minnesota court has determinative jurisdiction over the issues determined by the Texas court.

Appellant and appellee were married and divorced in Minnesota. The original divorce decree, signed in 1986, contained detailed provisions for joint custody of the children with appellee having physical custody of the children, for child support, and for visitation. For employment purposes, after an interim stay in Kansas City, Missouri, appellee moved to Amarillo in the spring of 1987 and the children moved there also in August of 1987. Appellant has continued to reside in Minnesota at all times from the date of the divorce to the present.

On October 22, 1987, the Minnesota court modified its divorce decree, making some increase in the amount of the child support and allowing appellant to offset visitation expenses to Amarillo against his child support obligations. Appellee then initiated the instant action in Texas on January 19, 1989, seeking modification of the prior Minnesota orders. On January 20, 1989, appellant filed an action in the Minnesota court.

Though various other motions were filed by both parties in both courts, the Minnesota decree was modified by the Minnesota court on July 3, 1989, and by the Texas court on July 28, 1989. Since it is from the Texas order that this appeal arises, we will direct our attention to it and will discuss portions of the evidence only as necessary to a proper discussion of the determinative jurisdiction question before us.

Parenthetically, both parties have filed unopposed motions to supplement the transcript with various documents. Those motions are granted and the items included will be referred to only as necessary.

The thrust of appellant's argument is that under the Parental Kidnapping Pre-

vention Act of 1980 (PKPA), 28 U.S.C.A. § 1738A (West Supp.1990), the Minnesota court has continuing jurisdiction over the matters involved in this cause and its decrees are entitled to full faith and credit from the Texas court. Appellee argues the Texas court was entitled to modify the Minnesota decree by virtue of the Uniform Child Custody Jurisdiction Act (UCCJA),[1] Tex.Fam.Code Ann. §§ 11.51, et seq. (Vernon 1986).

▮▮▮ The PKPA and the UCCJA were both designed to prevent jurisdictional conflict and competition over child custody and, in particular, to deter parents from abducting children for the purpose of obtaining custody awards. *Cunningham v. Cunningham*, 719 S.W.2d 224, 227 (Tex. App.—Dallas 1986, writ dism'd); *Lundell v. Clawson*, 697 S.W.2d 836, 838 (Tex.App. —Austin 1985, no writ). The federal act became effective on July 1, 1981, which, of course, was before the orders here in question. Hence, it applies to this case, and, in any conflicting areas, takes preference over the Texas version of the UCCJA. *See Ray v. Ray*, 494 So.2d 634, 636 (Ala.Civ. App.1986); *Mitchell v. Mitchell*, 437 So.2d 122, 125 (Ala.Civ.App.1982).

▮▮▮ Since the children lived in Texas for a period in excess of six months prior to the proceedings in question, Texas undisputedly is now their "home state" under both the PKPA and the Texas UCCJA and has acquired subject-matter jurisdiction of the children's status. 28 U.S.C.A. § 1738A(b)(4) and (f); Tex.Fam.Code Ann. §§ 11.52(5), 11.53. Additionally, Minnesota undisputedly had jurisdiction over the original custody determination made in the 1986 divorce decree and continues to have jurisdiction concerning the children. Minn.Stat. Ann. § 518A.03; 28 U.S.C.A. § 1738A(c) and (d). Under the PKPA, the state which rendered the initial custody order would have continuing jurisdiction if the order was rendered in compliance with the act, and the child or one of the contestants continues to reside in the state. *Ray v.*

*Ray*, 494 So.2d at 636. The Minnesota decree was rendered in compliance with the PKPA and appellant continues to reside in Minnesota.

▮▮▮ Thus, it is possible under both statutes for a Texas court and a court of a sister state to have concurrent jurisdiction of the same child custody question. *Lundell v. Clawson*, 697 S.W.2d at 838, citing *Rush v. Stansbury*, 668 S.W.2d 690, 691 (Tex.1984). A strong policy argument can be made that since Minnesota is no longer the "home state" of the children, its connection to the children and the evidence relating to their needs is more tenuous than that of Texas, and the latter should be the one to make decisions about custody. However, there are other considerations, and, because of the resolution of competing considerations by the United States Congress expressed in the PKPA, the fact that the Texas court has such "home state" concurrent jurisdiction does not necessarily mean that it may exercise that jurisdiction.

The PKPA requires every state to give full faith and credit to child custody determinations of other states. 28 U.S.C.A. § 1738A(a). Paragraph (f) of the Act provides:

A court of a State may modify a determination of the custody of the same child made by a court of another State, if

(1) it has jurisdiction to make such a child custody determination; and

(2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.

Sections 11.63 and 11.64(a) of the Texas Family Code require enforcement of an existing child-custody decree, and even if a Texas court had jurisdiction of the parties and the subject matter, it may not exercise that jurisdiction to modify the existing custody decree unless "it appears ... that the court that rendered the decree does not have jurisdiction under jurisdictional prerequisites substantially in accordance with

1. Minnesota has also adopted a version of the UCCJA in Minn.Stat.Ann. §§ 518A.01 et seq.

(West 1989).

this subchapter or has declined to assume jurisdiction to modify the decree...."

■ Appellee argues that Minnesota does not meet the jurisdictional prerequisites of Texas law because, she says, this state emphasizes "home state" jurisdiction while Minnesota's claim to jurisdiction comes from "significant connections" and the residence of appellant in that state. Minn.Stat.Ann. § 518A.03. We do not agree that any such suggested difference in emphasis is sufficient to show Minnesota's failure to meet Texas' jurisdictional prerequisites since, under the PKPA, its jurisdiction is measured by its own laws. Moreover, Minnesota and Texas have substantially the same jurisdictional prerequisites under the uniform act adopted by both parties. *Lundell v. Clawson*, 697 S.W.2d at 839; Tex.Fam.Code Ann. § 11.53; Minn.Stat.Ann. § 518A.03. Thus, the exercise of jurisdiction by the Texas trial court to modify the Minnesota decrees depends upon whether the Minnesota court has since lost or declined jurisdiction to modify them.

Appellee contends Minnesota lost or declined jurisdiction to modify because (1) it expressly declined jurisdiction by conditioning its assertion of custody and visitation jurisdiction upon our decision whether to reverse the trial court; (2) it impliedly declined jurisdiction by failing to assert custody and visitation jurisdiction until an order of the Minnesota court dated April 5, 1990; and (3) it failed to follow its own statutory requirement to stay a proceeding when another custody proceeding is pending in another court. We disagree with each of those contentions.

On April 5, 1990, while this appeal was pending, the Minnesota court entered its most recent order. Pertinent to our discussion are its conclusions of law and decretal portions. They are as follows:

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over all dissolution matters, including child support and visitation expenses.

2. This Court has continuing jurisdiction over child custody and visitation based on the children's best interests pursuant to Minnesota's version of the Uniform Child Custody Jurisdiction Act.

3. Minnesota is not an inconvenient forum.

4. This Court will decline to exercise its jurisdiction over child custody and visitation if Texas insists on exercising jurisdiction pursuant to an appellate court decision.

IT IS HEREBY ORDERED:

1. Petitioner's motion for this Court to exercise jurisdiction is granted with respect to child support and visitation expenses and partially granted with respect to child custody and visitation.

2. Respondent's motion for this Court to decline jurisdiction is granted with respect to child custody and visitation issues if an appellate court rules this Court should not be exercising jurisdiction or that another Court should be exercising jurisdiction.

3. Petitioner shall provide the Texas Court of Appeals and District Court with a copy of this Order and Memorandum.

Parenthetically, we note appellee's notice of appeal of this order is included with other documents in her motion to withdraw her objection to our consideration of the above order and to further supplement the record.

■ The basis of appellee's contention that the Minnesota court has declined jurisdiction is, of course, the recitations in paragraph 4 of the above conclusions of law and paragraph 2 of the decretal portion. Considering the order as a whole, we do not agree that the Minnesota court declined jurisdiction within the purview of the PKPA. Those recitations are, rather, a praiseworthy attempt by that court to shorten the present period of uncertainty by deferring to our decision as to the legal ramifications in this case. Otherwise, the order clearly shows that the Minnesota court continues to assert its determinative jurisdiction.

Moreover, we have examined the fairly lengthy transcript of correspondence and

other documents furnished by appellee to support her conclusion that the Minnesota court impliedly declined jurisdiction by failing to assert jurisdiction until the April 5, 1990, order. Even assuming, arguendo, that a court could impliedly decline jurisdiction under the PKPA, a holding we specifically do not make, these instruments do not show even an implied declination by that court.

The thrust of appellant's next contention is that the Minnesota court may not exercise its jurisdiction because of Minnesota Statute Annotated § 518A.06(1) and PKPA § 1738A(g). Section 518A.06(1) provides:

A court of this state shall not exercise its jurisdiction under section 518A.01 to 518A.25 if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction *substantially in conformity with the provisions of sections 518A.01 to 518A.25*, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons. (emphasis added).

Section 1738A(g) provides:

A court of a State shall not exercise jurisdiction in any proceeding for a custody determination commenced during the pendency of a proceeding in a court of another State where such court of that other State *is exercising jurisdiction consistently with the other provisions of this section* to make a custody determination. (emphasis added).

Appellee theorizes that because this Texas proceeding was filed on January 19, 1990, one day before the January 20 filing in Minnesota, the latter court, by its own law could not exercise its jurisdiction. We disagree.

■ Under the express provision of PKPA section 1738A(g), the court of the first proceeding, under appellee's theory, Texas, must be exercising its jurisdiction consistently with the PKPA in order to activate the first part of the section. As we discussed earlier, because there was no compliance with PKPA § 1738A(f), the Texas court was not exercising its jurisdiction

consistently with the PKPA. *See Matter of Pima County Juvenile Action*, 147 Ariz. 527, 711 P.2d 1200, 1206 (Ariz.Ct.App. 1985), *modified*, 147 Ariz. 584, 712 P.2d 431 (1986). Thus, Minnesota was entitled to exercise its jurisdiction. For reasons we have expressed above, the PKPA would take precedence over any apparent conflict with state law.

Since we must sustain appellant's third point challenge to the jurisdiction of the trial court, the discussion of his other points is not necessary. Appellant's third point is sustained, the judgment of the trial court is reversed, and this proceeding is dismissed for lack of jurisdiction.

## ON MOTION FOR REHEARING

In five points, appellee N___ D___ R___ asserts we erred in our original opinion. In the second of these points she argues that in reversing and dismissing the entire cause, we failed to distinguish between the separate jurisdictional bases for orders concerning custody, visitation, child support, and visitation expenses. We will now discuss those matters.

■ It is settled that a "custody determination" is a status adjudication not dependent upon personal jurisdiction over the parents. *Henry v. Rivera*, 783 S.W.2d 766, 769 n. 2 (Tex.App.—San Antonio 1990, no writ); *Perry v. Ponder*, 604 S.W.2d 306, 313 (Tex.Civ.App.—Dallas 1980, no writ); *see also, Cunningham v. Cunningham*, 719 S.W.2d 224, 227 (Tex.App.—Dallas 1986, writ dism'd). A "custody determination" is defined as an order or judgment, etc., which provides for the *custody* or *visitation* of a child. (emphasis added). 28 U.S.C.A. § 1738A(b)(3) (West Supp.1990). It logically follows, then, that determinations of both custody and visitation require subject matter jurisdiction. We remain convinced that Minnesota has jurisdiction to determine both custody and visitation issues.

■ However, a claim for child support is closely analogous to a claim for debt in that it seeks a personal judgment establishing a direct obligation to pay money. *Per-*

*ry v. Ponder,* 604 S.W.2d at 312–13. That being so, personal jurisdiction over a non-resident is necessary to the validity of such an order. *Id.*

In relation to visitation expenses, appellee argues that *Hilt v. Kirkpatrick,* 538 S.W.2d 849, 852 (Tex.Civ.App.—Waco 1976, no writ), inferentially holds that personal jurisdiction over a non-resident is not essential to the validity of an order requiring the payment of such expenses. We disagree. Not only was the *Hilt* case decided before the passage of the PKPA, which, we think, might well require a different outcome, but, upon close examination, it becomes obvious that the instant question was neither presented to nor considered by that court. Of the cases that cite and even follow *Hilt,* none do so for the purpose of holding that allocation of visitation expenses requires status adjudication. *See Creavin v. Moloney,* 773 S.W.2d 698 (Tex.App.—Corpus Christi 1989, writ denied); *Perry v. Ponder, supra; Crockett v. Crockett,* 589 S.W.2d 759 (Tex. Civ.App.—Dallas 1979, writ ref'd n.r.e.); *Thornlow v. Thornlow,* 576 S.W.2d 697 (Tex.Civ.App.—Corpus Christi 1979, writ dism'd), *cert. denied,* 445 U.S. 949, 100 S.Ct. 1596, 63 L.Ed.2d 784 (1980); *Butler v. Butler,* 577 S.W.2d 501 (Tex.Civ.App.—Texarkana 1978, writ dism'd).

We believe that visitation expenses are also more akin to a personal obligation or debt that a valid order requires personal rather than status jurisdiction. *See Hemingway v. Robertson,* 778 S.W.2d 199, 202 (Tex.App.—Houston [1st Dist.] 1989, no writ), and *Fox v. Fox,* 559 S.W.2d 407, 410 (Tex.Civ.App.—Austin 1977, no writ). Thus, if the trial court here had personal jurisdiction over appellant, that portion of its orders pertaining to support and visitation expenses would be valid.

In *Mitchim v. Mitchim,* 518 S.W.2d 362 (Tex.1975), the Court adopted a two-pronged test for acquiring personal jurisdiction over a non-resident. That test requires (1) a statute which authorizes the acquisition of jurisdiction in the manner used and (2) sufficient contacts between the defendant and the forum state relevant to the cause of action to satisfy traditional notions of fair play and substantial justice. *Id.* at 366.

Pursuant to Texas Family Code Annotated § 11.051 (Vernon 1986), a court can exercise personal jurisdiction in a suit affecting the parent-child relationship over the non-resident parent if certain procedural prerequisites are met. Texas Rule of Civil Procedure 120a permits a special appearance for the purpose of objecting to the jurisdiction of the court over a party on the ground that such party is not amenable to process issued by the court. The rule also provides that any appearance not complying with it is a general appearance. Appellant has attempted to enter such a limited appearance contesting the jurisdiction of the trial court.

In part A of her third point in this motion for rehearing, appellee points out that in his appearance, appellant raised the question of subject matter jurisdiction as well as that of personal jurisdiction. The effect of doing so, she urges, was to waive appellant's right of special appearance thereby investing the trial court with in personam jurisdiction over him. We agree.

The initial challenge made by appellant was to the subject matter jurisdiction of the trial court. As this Court explicated in *Ex parte Bowers,* 671 S.W.2d 931, 935 (Tex.App.—Amarillo 1984, no writ), a court's jurisdiction consists of two elements: (1) jurisdiction of the subject matter and (2) jurisdiction of the person. The first element is established by operation of law through the constitutional and statutory provisions that enumerate the kinds of cases the courts can entertain. The second element is established either by a litigant's voluntary entry into the court or by the serving of process on the litigant in accordance with state procedures consistent with due process. *Id.* It is the second element which is within the purview of the limited appearance contemplated by Rule 120a(1). *See Botello v. Salazar,* 745 S.W.2d 540, 541 (Tex.App.—Houston [14th Dist.] 1988, no writ).

In *Perry v. Ponder, supra,* the court, while recognizing that subject matter contentions cannot properly be raised by a special appearance, suggested:

> Rule 120a permits them (subject matter questions) to be asserted alternatively without making a general appearance, like a defense on the merits, after the plea of lack of personal jurisdiction has been overruled.

604 S.W.2d at 323. In his pleading in this case, appellant's initial attack was upon the trial court's subject matter jurisdiction. He made no attempt to plead it in the alternative in the manner suggested by the *Perry* court. By failing to do so, appellant made a general appearance and subjected himself to the in personam jurisdiction of the trial court.

Accordingly, appellee's second point and part A of her third point are sustained. We remain convinced that our original disposition of the case was otherwise correct and overrule the remainder of her points. Accordingly, that portion of the trial court's judgment modifying child support and visitation expenses is affirmed. The remainder of its judgment is reversed and the cause is dismissed as to those matters.

Costs are assessed equally between appellant and appellee. Tex.R.App.P. 89.