In re David M. BRADSHAW, Relator.

No. 14–08–00957–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Dec. 16, 2008.

Shirley A. Mitchell, Roy Smith, Houston, TX, for Relator.

Wayne E. Revack, Bellaire, TX, for Real Party In Interest.

Panel consists of Justices YATES, SEYMORE, and BOYCE.

## OPINION

SEYMORE, Justice.

On October 16, 2008, relator, David M. Bradshaw, filed a petition for writ of mandamus. *See* Tex. Gov't Code Ann. § 22.221 (Vernon 2004); *see also* Tex. R.App. P. 52. Bradshaw requests that we compel the Honorable Frank Rynd, presiding judge of the 309th District Court of Harris County, to vacate his September 10, 2008 order, which denies Bradshaw's petition for writ of habeas corpus for the immediate possession of the child, C.S.B., pursuant to a valid custody order, and grant the same. We conditionally grant the petition, in part, and deny it, in part.

### Background

Bradshaw and real party in interest, Sherah Juarez, were divorced in Tennessee in 1996. Bradshaw and Juarez were appointed joint managing conservators of the children, L.H.B., currently age 14, and C.S.B., currently age 16, with Bradshaw

having the right to determine the primary residence of the children.[1] On December 27, 1996, a district court in Oklahoma modified the joint custody plan, and found that it was in the best interests of the children to appoint Bradshaw sole managing conservator and Juarez possessory conservator. L.H.B. and C.S.B. have been living with Bradshaw in Virginia. On June 16, 2008, Juarez took possession of C.S.B. and L.H.B. for summer visitation in Houston. On August 9, 2008, L.H.B. was returned to Bradshaw in Virginia, but C.S.B. was not. On August 20, 2008, Bradshaw arrived at Juarez's home with the Harris County Sheriff's Department in an attempt to retrieve C.S.B., but Juarez refused to release the child.

On August 21, 2008, Juarez filed an original petition in a suit affecting the parent-child relationship, in which she sought to modify the Oklahoma order and be awarded the right to designate the primary residence of C.S.B. That same day, Associate Judge Meca Walker signed a temporary order (1) prohibiting Bradshaw from having any contact with C.S.B. until a hearing was held, (2) directing that C.S.B. remain in Juarez's possession, and (3) setting a hearing for September 3, 2008.

On August 25, 2008, Bradshaw filed a petition for writ of habeas corpus for the return of C.S.B. to his possession. That same day, Judge Rynd signed an order for a writ of attachment and an order for the issuance of a writ of habeas corpus for C.S.B., directing that C.S.B. be produced at the court at 9:00 a.m., on September 2, 2008.

On August 26, 2008, Harris County deputies executed the writ of attachment and brought C.S.B. to the 309th District Court. Associate Judge Michael Hay conducted a hearing and interviewed C.S.B., orally granted the writ of habeas corpus, rescind-ed the August 21, 2008 temporary restraining order, and awarded Bradshaw $1,500 in attorney's fees. Judge Judy Warne signed the order directing Juarez to return C.S.B. and awarding Bradshaw $1,500 in attorney's fees.

C.S.B. was to leave with Bradshaw after the August 26, 2008 hearing. Instead, C.S.B. ran from the courthouse. C.S.B. called Juarez from a restaurant. Juarez and her husband drove the restaurant and took C.S.B. to their home. Juarez called Bradshaw to say he could retrieve C.S.B. at her home: however, when Bradshaw arrived C.S.B. refused to get in the car and leave with him. After C.S.B. and Bradshaw talked in the driveway of Juarez's home for about two hours, C.S.B. walked away from Bradshaw to the home of a friend in the neighborhood. C.S.B. returned to Juarez's home at 1:00 a.m.

On August 27, 2008, Bradshaw requested a second writ of attachment for C.S.B., and Judge Hay held a hearing. Judge Hay commented that if he granted another writ of attachment, C.S.B. would run away again, and denied Bradshaw's request. On August 29, 2008, Judge Rynd signed an order appointing an amicus attorney for C.S.B.

On September 2, 2008, Bradshaw, his counsel, and amicus counsel appeared for a hearing before Judge Rynd on the habeas corpus. However, Juarez, her counsel, and C.S.B. failed to appear. Judge Rynd signed a writ of attachment for the amicus attorney to execute the following day.

On September 3, 2008, Judge Rynd held a hearing, at which all parties, including C.S.B., were present. Judge Rynd ruled that service was not achieved on Bradshaw in Juarez's suit affecting the parent-child relationship because Bradshaw had immunity to civil process while in Texas on a habeas proceeding to have C.S.B. returned

---

1. C.S.B. will turn 17 in January 2009.

to him.[2] With respect to the habeas corpus, Judge Rynd, prior to any testimony, ruled that he was rescinding the August 26, 2008 writ of habeas corpus granted by Judge Hay. Judge Rynd then allowed the parties to put on testimony by Bradshaw, Juarez, and C.S.B. After the testimony, Judge Rynd changed his prior ruling, explaining that "I feel like my hands are tied by the law" and announcing that he was granting the writ of habeas corpus. Judge Rynd suggested that Juarez seek legal counsel in Virginia to modify the custody order. Judge Rynd returned to his chambers with the amicus attorney and informed C.S.B. that he would be returning to Virginia with Bradshaw.

Judge Rynd then returned to the courtroom "to reopen the hearing" because C.S.B. had an "emotional outburst" when Judge Rynd told him that he would be returning to Virginia with Bradshaw. After further testimony by C.S.B. and Juarez, Judge Rynd denied the writ of habeas corpus. On September 10, 2008, Judge Rynd signed an order denying Bradshaw's petition for a writ of habeas corpus, directing that Juarez maintain sole and exclusive possession of C.S.B., pending further orders of the court, and directing that Bradshaw be allowed to maintain reasonable phone access to C.S.B. Bradshaw brings this original proceeding to compel Judge Rynd to vacate his September 10, 2008 order denying his petition for writ of habeas corpus, and grant the same.

### Standard of Review

■ Mandamus is proper to compel enforcement of a relator's right to custody.

*Hui–Mei Wise v. Yates,* 639 S.W.2d 460, 461 (Tex.1982) (orig. proceeding) (per curiam); *Forbes v. Wettman,* 598 S.W.2d 231, 232 (Tex.1980) (orig. proceeding). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992) (orig. proceeding).

### Relevant Habeas Corpus Law

■ Under Section 157.372(a) of the Texas Family Code,

[I]f the right to possession of a child is governed by a court order, the court in a habeas corpus proceeding involving the right to possession of the child shall compel return of the child to the relator only if the court finds that the relator is entitled to possession under the order.

Tex. Fam.Code Ann. § 157.372(a) (Vernon 2002). Section 157.372(a) requires the trial court to grant a writ of habeas corpus if it finds that a court order entitles the relator to possession. *Forbes,* 598 S.W.2d at 232. The issuance of the writ should be automatic, immediate, and ministerial. *Greene v. Schuble,* 654 S.W.2d 436, 438 (Tex.1983) (orig. proceeding).

■ The trial court, however, may enter temporary orders if it finds that there is a serious immediate question concerning the welfare of the child as provided in Section 157.374 of the Texas Family Code. Tex. Fam.Code Ann. § 157.374 (Vernon 2002); *Hui–Mei Wise,* 639 S.W.2d at 461; *Forbes,* 598 S.W.2d at 232.[3] The degree of seri-

**2.** *See* Tex. Fam.Code Ann. § 157.375 (Vernon 2002) (providing relator is not amenable to civil process while in Texas for sole purpose of compelling return of child through habeas corpus proceeding); *Marshall v. Wilson,* 616 S.W.2d 932, 934 (Tex.1981) (holding that managing conservator, while in Texas to seek return of child by writ of habeas corpus, may

not be served with civil process and is subject to jurisdiction of court in which habeas corpus is pending and only for purpose of prosecuting writ of habeas corpus).

**3.** Section 157.374 of the Texas Family Code states:

ousness that would justify disregarding a court's custody order is "a child who [is] in such imminent danger of physical or emotional harm that immediate action [is] necessary to protect the child." *Strobel v. Thurman*, 565 S.W.2d 238, 240 (Tex.1978) (orig. proceeding) (citing *McElreath v. Stewart*, 545 S.W.2d 955, 958 (Tex.1977) (orig. proceeding)). In the absence of an exception thereto, section 157.372 imposes a mandatory duty upon the trial court to grant a writ of habeas corpus. *Armstrong v. Reiter*, 628 S.W.2d 439, 440 (Tex.1982) (orig. proceeding).

### Serious Immediate Question Pertaining to the Welfare of the Child

■ In his first issue, Bradshaw contends that Judge Rynd abused his discretion by refusing to order Juarez to return C.S.B. to Bradshaw after the specific finding by Judge Hay that there was not an immediate serious question regarding the welfare of C.S.B. and the issuance of the August 26, 2008 writ of habeas corpus. Bradshaw argues the trial court cannot justify its refusal to enforce a valid custody order once a specific finding was made that C.S.B. was not in immediate harm or danger.

In his second issue, Bradshaw asserts that Judge Rynd abused his discretion by refusing to grant the writ of habeas corpus simply because Juarez and her counsel failed to appear at the September 2, 2008 hearing with C.S.B. after being duly noticed. Bradshaw argues that Judge Rynd was first required to hear evidence raising a question concerning the serious and immediate welfare, or order the return of C.S.B. based on the valid registered custody order.

Bradshaw's contentions are without merit. As set forth above, after the Au-

gust 26, 2008 hearing conducted by Judge Hay, C.S.B. took off by himself in downtown Houston. Later, that evening, C.S.B. refused to leave Juarez's house with Bradshaw and left by himself, going to a friend's house. On August 27, 2008, Judge Hay refused to issue a second writ of attachment because he believed C.S.B. would run away again. In light of these changed circumstances, Judge Rynd did not abuse his discretion by refusing to order Juarez to return C.S.B. to Bradshaw or to grant the writ of habeas corpus at the September 2, 2008 hearing. Bradshaw's first and second issues are overruled.

■ In his fourth issue, Bradshaw asserts that Judge Rynd abused his discretion when he entered emergency temporary orders giving Juarez the right to determine C.S.B.'s primary residence and excluding Bradshaw from possession or access when there was no evidence raising a serious and immediate question concerning C.S.B.'s welfare. Prior to any testimony at the September 3, 2008 hearing, Judge Rynd ruled that he was rescinding the writ previously granted by Judge Hay, and signed by Judge Warne, primarily because C.S.B. had run away twice. At that point, Judge Rynd agreed to allow the parties to put on witnesses.

Juarez testified that, a couple of weeks before C.S.B. was to return to Virginia, C.S.B., who "was crying and very emotional," told Juarez about circumstances in Bradshaw's home of which she was not aware. C.S.B. was very adamant about not getting on the plane to return to Virginia and threatened to run away. Juarez testified that C.S.B. will run away again if the court orders C.S.B. to return to Virgi-

---

Notwithstanding any other provision of this subchapter, the court may render an appropriate temporary order if there is a serious immediate question concerning the welfare of the child.

Tex. Fam.Code Ann. § 157.374.

nia, and there will no one there to help him.

C.S.B. testified that he had lived with his father for sixteen years and wanted to spend two years with his mother to build a relationship. C.S.B. called Bradshaw and told him that he wanted to live with Juárez. Bradshaw did not give him an answer, but told him he needed to come home and they could talk about it. Two years before these events, C.S.B. told Bradshaw that he wanted to live with his mother. Bradshaw and his wife told C.S.B. they were hurt because of his rejection.

C.S.B. explained that Bradshaw is a good parent until it comes to C.S.B.'s having a relationship with his mother, and his relationship with Juarez is on Bradshaw's terms. C.S.B. thinks Bradshaw has tried to replace Juarez with his stepmother. Bradshaw does not tell C.S.B. that he cannot refer to his mother as "mom," but he makes him feeling guilty for doing so. C.S.B. has always had to call his stepmother "mom," although Bradshaw disputed this.

C.S.B. testified that Bradshaw will not allow him to call Juarez on his cell phone, but talks to Juarez once or twice a month from the home phone. Juarez stated that she talks to the children once every ten to fourteen days. When she tries to call the children, either there is no response or they do not return her calls. Bradshaw stated that he has never prevented C.S.B. from having telephone conversations with Juarez, but allows C.S.B. to communicate freely with Juarez. However, Bradshaw admitted that at "some point" conversations between the children and Juarez were being tape recorded.

C.S.B. stated that when he returns to Virginia after visiting Juarez, he cannot find his photographs of Juarez. C.S.B. has had photographs of his mother on his desk, but they do not remain there. C.S.B. testified that he is scared to ask Bradshaw why he cannot have pictures of his mother in his room. Bradshaw testified that he has never taken C.S.B.'s photographs of Juarez from him.

C.S.B. recited an incident when Bradshaw and Juarez were having an argument regarding his sister. Bradshaw "ripped [C.S.B.] our of [his] bed." C.S.B. got in trouble for defending Juarez and Bradshaw made him tell Juarez on the phone that she was wrong. Bradshaw stated that he has never grabbed C.S.B. when they had a disagreement over Juarez, and he has never punished C.S.B. for taking Juarez's side.

C.S.B. also described the events that occurred on the evening of August 26, 2008, when Bradshaw attempted to retrieve C.S.B. Bradshaw and one of his attorneys went to Juarez's home to pick up C.S.B. so that they could return to Virginia. C.S.B. refused to leave with Bradshaw, and sat in the car with his feet hanging outside of the car so the door could not be closed. C.S.B. testified that Bradshaw tried to put him in the car, and there was a physical struggle between them. C.S.B. told Bradshaw he was not getting in the car and asked Bradshaw if he was going to physically force him into the car. According to C.S.B., Bradshaw's attorney started yelling at Bradshaw to stop touching C.S.B. C.S.B. testified that Bradshaw's attorney told him he could go to "juvi" or his mother could go to jail and "that'll be put on you." Juarez testified Bradshaw's attorney told C.S.B. that she was going to report to the judge that Juarez was harboring a child and, because he ran away, the judge would order two police officers to physically put him on a plane to Virginia.

Bradshaw testified that he did not grab C.S.B., but only wanted to move his feet out of the way. Bradshaw stated that his attorney did not tell him to take his hands

off C.S.B. Bradshaw testified that no one told C.S.B. the police would be called if he did not return to Bradshaw or that Juarez would be arrested.

After Bradshaw tried to physically put him in the car, C.S.B. stated that he does not know what to expect from Bradshaw if he returns to Virginia. If he were ordered to return to Virginia, C.S.B. would "find a way to come right back here. . . . I would find a way to come back to my mom. If that means running way [sic] again, I guess, I'd have to do that." He understands that is could be very dangerous for a boy his age and size to travel alone from Virginia to Texas. C.S.B. stated that, except for trying to put him in the car, Bradshaw has never physically laid his hands on him. Bradshaw testified that he has never physically abused C.S.B. and Juarez has never conveyed to him that he has been emotionally abusive to C.S.B.

When Judge Rynd reopened the hearing after C.S.B.'s emotional outburst, C.S.B. testified that "secrets" were revealed during the hearing for which he is afraid of reprisals, i.e., that Bradshaw takes away C.S.B.'s pictures of Juarez and listens to phone conversations between C.S.B. and Juarez. C.S.B. testified that Bradshaw has recorded telephone conversations between him and his mother in the past, and that he has caught his stepmother listening in on his conversations with Juarez. Juarez testified that C.S.B. is very reserved and uncomfortable when he is on the phone with her, and has no communication with C.S.B. when he is away from the house.

C.S.B. testified that Bradshaw will not allow him to have a relationship with Juarez and he needs his mother in his life. C.S.B. explained that his friends are under the impression that Bradshaw's wife is C.S.B.'s biological mother.

C.S.B. testified that he has been "beaten down emotionally." If he has to return with Bradshaw, C.S.B. thinks he could be physically harmed, and the emotional treatment from Bradshaw could worsen. C.S.B. admitted that there has not been any physical violence in the past, but after Bradshaw tried to force him into the car when he told him he was not returning to Virginia, C.S.B. fears that it is starting to become physical and he is scared it could go further.

After Judge Rynd reopened the hearing and allowed further testimony by C.S.B. and Juarez, he denied the writ of habeas corpus and entered temporary orders based on his finding that there is a serious immediate question concerning the welfare of C.S.B. because he already had run away twice, and that C.S.B. was likely to run away again. Judge Rynd further stated that his emotional health is in danger because of the hostility toward Juarez in Bradshaw's home.

▮▮▮ The fact that a child prefers to be with one parent over the other is not sufficient to support a finding that there is an immediate serious question concerning the child's welfare.[4] The fact that a child

---

4. *See Brown v. Dixon,* 776 S.W.2d 599, 602 (Tex.App.-Tyler 1989, orig. proceeding) (holding subjective belief of maternal grandparents and their witnesses that child was better off with them and would be emotionally upset if made to go with father did not raise existence of unexpected crises or dire emergency demanding immediate action to protect child); *Lundell v. Clawson,* 697 S.W.2d 836, 840 (Tex.App.-Austin 1985, orig. proceeding) ("And it appears from the record that the trial court denied [relator's] petition for habeas corpus chiefly for the non-critical ground that the child himself desired to remain with his mother."); *Klein v. Cain,* 676 S.W.2d 165, 172 (Tex.App.-Amarillo 1984, orig. proceeding) (factual findings, which evinced, at most, child's emotional well-being was better served by not changing home and lifestyle, fell far short of circumstances of immediacy and seriousness required by statute to authorize temporary orders).

has *merely* threatened to run away is not sufficient to support a finding that there is an immediate serious question concerning the child's welfare. *Strobel*, 565 S.W.2d at 239–40 (father's suggestion that there may be serious question concerning welfare of child because of threat to run away did not show any serious immediacy to disregard Indiana decree). However, here, the fact that C.S.B. *had already* run away twice was a significant factor in Judge Rynd's denial of the writ of habeas corpus. C.S.B. testified that he would find a way to return to Juarez in Texas. Given the fact that C.S.B. had already run away twice, with one occasion in downtown Houston, where he was in completely unfamiliar surroundings, supports Judge Rynd's finding that C.S.B. is likely to run away again. Moreover, Judge Rynd observed C.S.B.'s testimony and C.S.B.'s "emotional outburst" when he was told that he would have to return to Virginia with Bradshaw. We will not second guess Judge Rynd's observations of C.S.B. We find that the evidence supports Judge Rynd's finding that a serious immediate question regarding the welfare of C.S.B. exists. Bradshaw's fourth issue is overruled.

In his third issue, Bradshaw argues that Judge Rynd abused his discretion when, he rescinded the writ granted on August 26, 2008, because the ruling was based on the "best interest of the child standard." The trial court may not deny a writ of habeas corpus on the basis of the best interests of the child. *Schoenfeld v. Onion*, 647 S.W.2d 954, 955 (Tex.1983) (orig. proceeding) (per curiam). As discussed above, Judge Rynd initially rescinded the August 26, 2008 writ of habeas corpus at the beginning of the September 3, 2008 hearing, stating "I believe it's not in the best interest of the child to have the writ of habeas corpus issued." However, Judge Rynd's final ruling, at the September 3,

2008 hearing, denied the writ on the finding that "there is a serious, immediate question concerning the welfare of the child." Bradshaw's third issue is overruled.

### Temporary Orders

 In his fifth issue, Bradshaw argues that Judge Rynd abused his discretion when he granted emergency temporary orders giving Juarez the right to determine C.S.B.'s primary residence for an indefinite period and excluding Bradshaw from possession and access to C.S.B. Juarez responds that Judge Rynd wanted to give the court in Virginia time to address the custody issue. The portion of the September 10, 2008 order, relevant to this issue, states:

> Additionally, in accordance with § 157.374 of the Texas Family Code, the Court finds that a serious and immediate question exists as to the welfare of the child based on the actions of the father, DAVID BRADSHAW[,] and orders that *the mother, SHERAH JUAREZ[,] shall maintain sole and exclusive possession of this child pending further orders by the Court.* The [f]ather, DAVID BRADSHAW[,] shall be allowed to maintain reasonable phone access to the child while this matter is pending.[5]

 The hearing for the enforcement of the order for custody is not a readjudication of custody. *Black v. Onion*, 694 S.W.2d 52, 55 (Tex.App.-San Antonio 1985, orig. proceeding). Therefore, a temporary order should not be a final adjudication of custody. *In re Lau*, 89 S.W.3d 757, 759 (Tex.App.-Houston [1st Dist.] 2002, orig. proceeding). Here, there is no date specified for the termination of Juarez's custody of C.S.B. or a date set for another hearing

---

**5.** Emphasis added.

on the matter. Therefore, this order is not "temporary." *See id.* (holding that temporary order completely transferred custody without setting further hearing, writ action was fully terminated, and final adjudication of custody was affected); *Grimes v. Flores,* 717 S.W.2d 949, 952 (Tex.App.-San Antonio 1986, orig. proceeding) (holding that "temporary" order amounted to order modifying custody of children because language changed custody for an indefinite period); *Young v. Martinez,* 685 S.W.2d 361, 363 (Tex.App.-San Antonio 1984, orig. proceeding) (finding that habeas corpus application was used inappropriately to decide final custody where later hearing was not contemplated).

Moreover, the order does not provide Bradshaw with any visitation with, or access to, C.S.B., and is an improper denial of Bradshaw's right to visitation with C.S.B. *See In re Lau,* 89 S.W.3d at 759–60 (holding order improperly denied relator's right to visitation with his child). Accordingly, Bradshaw's fifth issue is sustained.

### Payment of Amicus Attorney's Fees

■ In his sixth issue, Bradshaw asserts that Judge Rynd abused his discretion, when on August 29, 2008, he appointed an amicus attorney and ordered Bradshaw and Juarez each to deposit $500.00 in the amicus attorney's trust account.[6] Bradshaw maintains that, because purpose of the amicus attorney is to assist the trial court in determining the "best interest of the child" and the "best interest of the child" standard is not applicable

to a habeas corpus proceeding, the trial court has erroneously ordered Bradshaw to pay the amicus attorney's legal fees.

The Texas Family Code defines "amicus attorney" as "an attorney appointed by the court in a suit, other than a suit filed by a governmental entity, whose role is to provide legal services necessary *to assist the court in protecting a child's best interests* rather than to provide legal services to the child." Tex. Fam.Code Ann. § 107.001(a) (Vernon Supp.2008) (emphasis added). The Family Code provides for the appointment of an amicus attorney in a suit affecting the parent-child relationship to advocate the best interests of the child. *See* Tex. Fam.Code Ann. § 107.005(a) (Vernon Supp.2008) (stating that, in a suit affecting the parent-child relationship, "an amicus attorney shall advocate the *best interests of the child* after reviewing the facts and circumstances of the case") (emphasis added).[7]

We do not find, and the parties do not cite, any provision allowing appointment of an amicus attorney in a habeas corpus proceeding. Indeed, the trial court may not deny a writ of habeas corpus on the basis of the best interests of the child. *Schoenfeld,* 647 S.W.2d at 955; *see also McElreath,* 545 S.W.2d at 957 ("[W]here there is a valid existing judgment of child custody, the issues of best interests of child and right of possession should not be relitigated.").

On August 21, 2008, Juarez filed an original petition in a suit affecting the parent-child relationship, in which she sought to

---

6. The September 10, 2008 order denying Bradshaw's petition for writ of habeas corpus does not direct any additional payments to the amicus attorney.

7. The trial court may further appoint amicus attorneys in certain other suits in which the best interests of the child are at issue. *See* Tex. Fam.Code Ann. § 107.021(a)(1) (Vernon Supp.2008) (providing that trial court may appoint an amicus attorney in "a suit in which the *best interests of a child are at issue,* other than a suit filed by a governmental entity requesting termination of the parent-child relationship or appointment of the entity as conservator of the child") (emphasis added).

modify the Oklahoma custody order and be awarded the right to designate the primary residence of C.S.B. On that same day, Associate Judge Meca Walker signed a temporary order (1) prohibiting Bradshaw from having any contact with C.S.B. until a hearing was held, (2) directing that C.S.B. remain in Juarez's possession, and (3) setting a hearing for September 3, 2008. On August 29, 2008, the Judge Rynd appointed the amicus attorney. The trial court's order states that an amicus attorney should be "appointed to provide legal services to assist the Court in *protecting the interest* of the minor child(ren)," and "[t]he Amicus Attorney shall only be required to attend court hearings where his or her presence is necessary to *protect the best interest of the child(ren)*." [8]

At the time Judge Rynd appointed the amicus attorney, Juarez's original petition in a suit affecting the parent-child relationship was pending. It was not until the September 3, 2008 hearing that Judge Rynd ruled service of Juarez's petition was not achieved on Bradshaw. Therefore, Judge Rynd did not abuse his discretion when he initially appointed the amicus attorney and ordered Bradshaw to pay $500.00 into the amicus attorney's trust account. *See* Tex. Fam.Code Ann. § 107.005(a). The record reflects that the amicus attorney, up to that point, only had appeared at the September 2, 2008 hearing when Judge Rynd issued the writ of attachment for the amicus attorney to bring C.S.B. to the court the next day.

However, after Judge Rynd ruled, at the September 3, 2008 hearing, that service

was not achieved on Bradshaw, the trial court then focused on the petition for writ of habeas corpus. At this point, because the "best interest of the child" standard is not applicable to a habeas proceeding, there should have been no need for continued participation of the amicus attorney. The record shows that when Judge Rynd granted the parties' request to present testimony, the amicus attorney questioned C.S.B. on direct examination and cross-examined Bradshaw and Juarez. When Judge Rynd reopened the hearing, he specifically requested that the amicus attorney "please asks some questions that will give me the whole truth." The amicus attorney again questioned C.S.B. on direct examination and cross-examined Juarez.

Because the best interests of the child standard is not applicable to a habeas corpus proceeding, we conclude that Judge Rynd abused his discretion in directing further participation of the amicus attorney during the hearing on the petition for a writ of habeas corpus. Therefore, we hold the trial court abused its discretion by ordering Bradshaw to pay attorney's fees for any work the amicus attorney performed relative to the habeas corpus matter.[9] Bradshaw's sixth issue is sustained.[10]

### Relator's Attorney's Fees

In his seventh issue, Bradshaw contends that Judge Rynd abused his discretion in failing to grant any fees, costs, or expenses related to the prosecution of the petition for a writ of habeas corpus. During the August 26, 2008 habeas proceeding, Judge Hay awarded Bradshaw

---

8. Emphasis added.

9. Juarez has never challenged the appointment of the amicus attorney or the payment of her fees.

10. The August 29, 2008 order appointing the amicus attorney directed that the parties each

were to deposit $500.00 in the amicus attorney's trust account "no later than 5:00 p.m., seven (7) days following the signing of this Order." There is nothing in the record to indicate whether Bradshaw deposited the $500.00.

$1,500 in attorney's fees, which Bradshaw contends is only a partial amount of what he requested. As discussed above, because Judge Rynd did not abuse his discretion in rescinding Judge Hay's August 26, 2008 ruling, he did not abuse his discretion by refusing to awarding attorney's fees to Bradshaw after the petition for a writ of habeas corpus was denied. Bradshaw's seventh issue is overruled.

## Conclusion

The September 10, 2008 temporary orders inappropriately modify the 1996 Oklahoma custody order. We further conclude that the trial court abused its discretion by ordering Bradshaw to pay the amicus attorney for any work performed pertaining to the habeas corpus matter. We also hold that Judge Rynd did not abuse his discretion by denying Bradshaw's petition for a writ of habeas corpus and request for attorney fees related to prosecution of the petition. Accordingly, we conditionally grant Bradshaw's petition for writ of mandamus, in part, and direct the trial court to modify its September 10, 2008 order consistent with this opinion, and direct that Bradshaw is not responsible for amicus attorney fees for work performed in connection with the habeas corpus matter. We deny Bradshaw's petition, in part, with regard to denial of his petition for a writ of habeas corpus and his request for attorney's fees. The writ will issue only if the trial court fails to act in accordance with this opinion.