**In the Interest of S.A.V. and K.E.V., Minor Children.**

No. D–0599.

Supreme Court of Texas.

July 1, 1992.

Rehearing Overruled Oct. 21, 1992.

Joe L. Lovell, Nancy J. Stone, Amarillo.

Ronald E. Walker, Jr., Amarillo, John J. Sampson, Austin.

## OPINION

COOK, Justice.

This case involves complex jurisdictional issues arising from a Texas trial court's modification of a Minnesota divorce decree. We must decide whether the Texas court could exercise jurisdiction to modify the decree with respect to four areas: child support, visitation expense, custody, and actual visitation arrangements. The court of appeals determined that the Texas court could exercise jurisdiction to modify child support and visitation expense but that the Texas court could not exercise jurisdiction to modify custody or visitation. 798 S.W.2d 293. Because we hold that the trial court could exercise jurisdiction over all

these issues, we affirm in part and reverse in part the judgment of the court of appeals.

### I. FACTS AND PROCEDURAL HISTORY

The mother and the father, both physicians, were married on June 7, 1980 in Minnesota. They continued to reside in Minnesota throughout their marriage. The mother and the father entered a stipulated divorce decree in 1986. The decree contained specific provisions relating to the two minor children of the marriage. The decree provided for joint custody of the children with the mother having physical custody. The decree also provided for visitation. In addition, the decree set out each parent's child support obligation. Each parent was obligated to pay child support when the children resided with the other parent for more than one week.

The mother moved to Amarillo in the spring of 1987. The children joined her there in August 1987. The father has continued to reside in Minnesota since the divorce.

On October 22, 1987, the Minnesota court modified its divorce decree. The court implemented a provision in the original decree which provided that the mother's child support obligation would be increased if her annual income reached $60,000. In addition, the Minnesota court held that the parties could deduct their visitation expenses from their child support obligation. This modification was made to allow for the visitation expenses the father incurred when traveling to Amarillo to see the children.

On January 19, 1989, the mother brought the instant action in Texas to modify the Minnesota court's October 1987 order. The mother asked the trial court to terminate the offset for visitation expenses. Additionally, she asked that she not be required to pay any child support to the father and that the court modify the joint conservatorship of the children.

The next day the father filed a motion to modify the same decree in a Minnesota court. The father asked that the mother

be ordered to pay additional child support and that the offset for visitation expenses be maintained.

Simultaneous modification proceedings in Texas and Minnesota resulted.

In order to object to the Texas trial court's exercise of jurisdiction, the father entered a special appearance pursuant to Rule 120a of the Texas Rules of Civil Procedure. The father's challenge to the Texas court's jurisdiction took two forms. First, the father objected to the trial court's exercise of subject matter jurisdiction to modify custody. Second, the father objected to the trial court's exercise of personal jurisdiction over him to modify his child support obligation. The trial court denied his special appearance and determined that it had subject matter jurisdiction over the case and personal jurisdiction over the father.

Before the Texas court reached the merits of the case, the Minnesota court issued an order modifying the Minnesota decree. The Minnesota order modified the parties' child support obligations and terminated the offset of visitation expenses. The Minnesota order did not alter custody or visitation.

After the Minnesota court had rendered its order, the Texas trial court issued an order modifying the Minnesota decree. The Texas court's order mirrored the Minnesota order with respect to child support and visitation expenses. However, the Texas order dissolved the joint conservatorship and appointed the mother as sole managing conservator. The order also narrowed and specified the father's visitation rights. The father appealed the Texas court's order modifying the Minnesota decree arguing that the trial court did not have subject matter jurisdiction over the case or personal jurisdiction over him. Additionally, the father challenged the merits of the trial court's modification of visitation and custody.

On April 5, 1989, while the case was pending before the Texas court of appeals, the Minnesota trial court entered a separate order that unconditionally asserted jurisdiction over child support issues. The order also conditionally asserted continuing jurisdiction over the custody issues involved in this case. The Minnesota trial court's assertion of jurisdiction over custody was expressly conditioned on an appellate court ruling. On December 24, 1990, the Minnesota court of appeals issued an opinion affirming the April 5th order of the Minnesota trial court.

In the appeal of the Texas order, the court of appeals determined that, by raising the issue of subject matter jurisdiction in his special appearance, the father made a general appearance before the trial court. Therefore, the court held that the father had subjected himself to the personal jurisdiction of the Texas court. As a result, the court of appeals determined that the trial court's modification of the father's support obligation and offset of visitation expenses was proper. The court determined, however, that the Texas court's modification of the Minnesota order as it related to custody and actual visitation arrangements was improper under the Parental Kidnapping Prevention Act of 1980 (PKPA), 28 U.S.C.A. § 1738A (West Supp.1990).

## II. DUE PROCESS REQUIREMENTS

We begin our examination of the issues presented in this case by examining the distinct due process requirements necessary for the proper exercise of jurisdiction over child support, visitation expense, child custody, and visitation.

### A. Child Support and Visitation Expense

■ Claims for child support and visitation expenses are like claims for debt in that they seek a personal judgment establishing a direct obligation to pay money. *See Creavin v. Moloney,* 773 S.W.2d 698, 703 (Tex.App.—Corpus Christi 1989, writ denied); *Perry v. Ponder,* 604 S.W.2d 306, 312–13 (Tex.Civ.App.—Dallas 1980, no writ). Therefore, a valid judgment for child support or visitation expenses may be rendered only by a court having jurisdiction over the person of the defendant. *See Kulko v. Superior Court of California,* 436 U.S. 84, 91, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132 (1978).

## B. Custody and Visitation

■ A "custody determination" means a court decision providing for the custody of a child, including visitation rights. TEX. FAM.CODE ANN. § 11.52 (Vernon 1986). Unlike adjudications of child support and visitation expense, custody determinations are status adjudications not dependent upon personal jurisdiction over the parents. *See Creavin,* 773 S.W.2d at 703; *Perry,* 604 S.W.2d at 313; *see also Shaffer v. Heitner,* 433 U.S. 186, 208 n. 30, 97 S.Ct. 2569, 2582 n. 30, 53 L.Ed.2d 683 (1977).

■ Generally, a family relationship is among those matters in which the forum state has such a strong interest that its courts may reasonably make an adjudication affecting that relationship even though one of the parties to the relationship may have had no personal contacts with the forum state. *See Creavin,* 773 S.W.2d at 703; *Perry,* 604 S.W.2d at 313. Consequently, due process permits adjudication of the custody and visitation of a child residing in the forum state without a showing of "minimum contacts" on the part of the nonresident parent. *See Creavin,* 773 S.W.2d at 703; *Perry,* 604 S.W.2d at 313.

The Texas legislature recognized the state's strong interest in determining the custody of children by adopting the Uniform Child Custody Jurisdiction Act (UCCJA). TEX.FAM.CODE ANN. § 11.51 *et seq.* (Vernon Supp.1992). To acquire jurisdiction over custody issues, no connection between the nonresident parent and the state is required. Instead, jurisdiction can be established by demonstrating that Texas has become the child's "home state." *Id.* at § 11.53. Texas will become the child's home state when the child has resided here for six months, or since birth if the child is younger than six months. *Id.* at § 11.52(5). Alternatively, a Texas court may assert jurisdiction to modify custody when the best interests of the child will be served because the child and at least one contesting parent have a significant connection with Texas and substantial evidence concerning the child's care exists in Texas. *Id.* at § 11.53(a)(2).

■ If the requirements of the Family Code are satisfied, the state's interest in determining custody has been demonstrated. That is, the state has acquired a sovereign's interest in and responsibility for the child's welfare. In such a situation, the state's interest in the child's welfare outweighs the nonresident parent's interest in avoiding the burden and inconvenience of defending the suit in Texas. Therefore, due process does not require that a connection exist between the nonresident parent and this state. In adjudications of custody, once these jurisdictional provisions have been satisfied, the court can properly exercise jurisdiction over the nonresident. Satisfaction of these provisions confers "personal jurisdiction" over the nonresident as well as subject matter jurisdiction over the case. *See Creavin,* 773 S.W.2d at 703; *Perry,* 604 S.W.2d at 313–14.

## III. JURISDICTION OVER CHILD SUPPORT AND VISITATION EXPENSE

■ Because custody adjudications do not require minimum contacts with the forum state, disputes involving both custody and child support create a unique jurisdictional problem for courts. A custody adjudication may be made by a court that has no jurisdiction to render a personal judgment for support against a nonresident parent. This difficulty, however, is inherent in our system of jurisdiction as a result of the separate due process requirements for adjudications of custody and adjudications of child support. With this inherent difficulty in mind, we must now attempt to reach a result that is both fair to the parties and in the best interest of the children.

## A. No Waiver of Special Exception

■ In determining whether the father waived his special appearance, the distinct jurisdictional requirements for adjudications of custody are relevant. The mother sought to have the Texas court modify both custody and child support. In his special appearance, the father challenged the trial court's subject matter jurisdiction to adjudicate custody as well as the court's

personal jurisdiction over the father. The court of appeals determined that, by raising the issue of subject matter jurisdiction in his special appearance, the father made a general appearance before the trial court. We disagree.

By challenging the court's subject matter jurisdiction over custody, the father challenged the satisfaction of the jurisdictional statute. As discussed earlier, in adjudications of custody, satisfaction of the jurisdictional statute confers "personal jurisdiction" over the nonresident. As a result, the father's challenge to the court's subject matter jurisdiction over custody issues served as a challenge to the court's "personal jurisdiction" over the father. This type of challenge is properly raised in a special appearance. *See* TEX.R.CIV.P. 120a. Therefore, we hold that the father did not waive his right to complain of the trial court's lack of personal jurisdiction over him by challenging the court's subject matter jurisdiction over custody issues.[1]

### B. Minimum Contacts Analysis

■■■ Because the father properly preserved his right to challenge the trial court's exercise of personal jurisdiction over him, we must determine whether that exercise of jurisdiction was proper. For a Texas court to properly exercise jurisdiction in suits seeking to impose a personal obligation to pay money, such as child support modification proceedings, two conditions must be met. First, a Texas long-arm statute must authorize the exercise of jurisdiction. Second, the exercise of jurisdiction must be consistent with federal and state constitutional guarantees of due process. *Schlobohm v. Schapiro,* 784 S.W.2d 355, 356 (Tex.1990).

Section 11.051 of the Family Code provides the Texas courts with personal jurisdiction over nonresident parents with regard to child support. Subsection 4 of that provision requires only "any basis" consis-

tent with due process. TEX.FAM.CODE ANN. § 11.051(4) (Vernon 1986).

■■■ Under the federal constitutional test of due process, the plaintiff must initially show that the defendant has established "minimum contacts" with the forum state. *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The plaintiff must then show that the assertion of jurisdiction comports with fair play and substantial justice. *Id.* The fair play analysis is separate and distinct from the minimum contacts issue. *See generally Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 113, 107 S.Ct. 1026, 1032–33, 94 L.Ed.2d 92 (1987); *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476–77, 105 S.Ct. 2174, 2184–85, 85 L.Ed.2d 528 (1985). The jurisdictional formula Texas courts are to use to ensure compliance with federal constitutional requirements of due process was recently clarified by this Court in *Guardian Royal Exchange Assurance v. English China Clays,* 815 S.W.2d 223 (Tex.1991). First, the nonresident must have purposely established minimum contacts with Texas. *Id.* at 230. This means that there must be a "substantial connection" between the nonresident defendant and Texas arising from action or conduct of the nonresident defendant purposefully directed toward Texas. *Id.* When specific jurisdiction is asserted, the cause of action must arise out of or relate to the defendant's contacts with Texas. *Id.* When general jurisdiction is alleged, there must be continuous and systematic contacts between the nonresident defendant and Texas. General jurisdiction requires a showing of substantial activities by the nonresident defendant in Texas. *Id.*

■■■ Second, the assertion of personal jurisdiction must comport with fair play and substantial justice. *Id.* at 231. In this inquiry, it is incumbent upon the defendant to present "a compelling case that the presence of some consideration would render judgment unreasonable." *Id.* (quoting

---

1. We do not reach the broader question of whether raising subject matter jurisdiction in a typical suit that seeks to impose a personal obligation constitutes a general appearance. *See Goodwine v. Superior Court of Los Angeles,*

63 Cal.2d 481, 47 Cal.Rptr. 201, 407 P.2d 1 (1965); *see also* Annotation, *Objection Before Judgment to Jurisdiction of Court Over Subject Matter as Constituting General Appearance,* 25 A.L.R.2d 833 (1952).

*Burger King,* 471 U.S. at 477, 105 S.Ct. at 2185). The following factors, when appropriate, should be considered: (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Id.* Once minimum contacts have been established, however, the exercise of jurisdiction will rarely fail to comport with fair play and substantial justice. *Id.; see Burger King,* 471 U.S. at 477–78, 105 S.Ct. at 2184–85; *Schlobohm,* 784 S.W.2d at 358.

The mother argues that the trial court's exercise of personal jurisdiction over the father was proper under the federal and state guidelines. She argues that the father's trips to visit the children establish the necessary minimum contacts. In addition, the mother relies on the fact that the father sought employment in Amarillo to argue that the father's contacts with Texas were continuing, systematic and related to his relationship with the children.

With the federal and state guidelines in mind, we hold that the Texas trial court's exercise of jurisdiction did not violate the father's right to due process.

First, the father purposefully established minimum contacts with Texas. There was a substantial connection between the father and Texas arising from his repeated visits to Texas. Although it is unclear exactly how often the father came to Texas, the record reflects that he visited Amarillo so often between September 1987 and January 1989, that there were many months in which he was able to virtually eliminate his entire child support payment ($1800 per month) through his visitation expense offset.

In analyzing minimum contacts, we recognize that it is not the number of the contacts with the forum state that is important. Rather, the quality and nature of the nonresident defendant's contacts are important. *Guardian Royal,* 815 S.W.2d at 230 n. 11. The record reflects that during his numerous trips to Texas, the father visited the children and sought employment in Amarillo. At the special appearance hearing, the father testified that on one trip to Amarillo he spent four hours with doctors at the Amarillo Diagnostic Clinic. During that visit, he inquired into the opportunities available at the clinic and expressed an interest in any openings that might arise. The father testified that, during a subsequent trip to Amarillo, he spent two hours making the rounds with another doctor at the clinic. This testimony indicates that the father's contacts with Texas included a continuing job search as well as visits with the children. Based on these facts, we find that the father purposefully established minimum contacts with Texas.

Two Texas cases have held that there were no minimum contacts between the nonresident parent and Texas even though the parent had paid visits to Texas. *See Cunningham v. Cunningham,* 719 S.W.2d 224, 228 (Tex.App.—Dallas 1986, writ dism'd); *Ford v. Durham,* 624 S.W.2d 737, 740 (Tex.App.—Fort Worth 1981, writ dism'd).[2] Although these cases appear to conflict with our decision today, they are distinguishable from the instant case.

In *Cunningham,* the nonresident parent's only recent contact with the state was one unsuccessful attempt to visit the child in Texas. *Cunningham,* 719 S.W.2d at 225. The court held that this contact and the mother's unilateral removal of the child

---

**2.** Other Texas courts have held that visits to the children in Texas may establish minimum contacts with Texas. *See Crockett v. Crockett,* 589 S.W.2d 759, 762 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r.e.); *Bergdoll v. Whitley,* 598 S.W.2d 932, 935 (Tex.Civ.App.—Austin 1980, writ ref'd n.r.e.).

Courts from other jurisdictions also hold that trips to visit the children can establish minimum contacts with the forum state. *See McCarthy v. McCarthy,* 146 Wis.2d 510, 431 N.W.2d 706 (Ct.App.1988); *Duehring v. Vasquez,* 490 So.2d 667 (La.Ct.App.1986). Because the father conducted a continuing job search while he was in Texas, we do not reach the question whether visits to the children alone can establish minimum contacts.

to Texas without the father's approval did not establish any basis meeting the requirements of due process. *Id.* at 228. The facts of the present case are distinguishable from those of *Cunningham.* The father has made numerous trips to Texas to visit the children. Additionally, the father sought employment during his visits to Texas.

In *Ford,* the nonresident parent came to Texas several times to visit the child and came to Texas at least twelve times to conduct business. *Ford,* 624 S.W.2d at 740. The court found that the father's trips to Texas to visit the child were insufficient to subject him to the jurisdiction of the Texas trial court. *Id.* The court further found that the business trips did not give rise to a cause of action regarding the parent-child relationship so as to subject him to the jurisdiction of the Texas courts. In this case, it appears that the father paid more visits to Texas than the nonresident parent in *Ford.* Additionally, *Ford* was decided before the Texas "due process formula" had been modified to allow for general jurisdiction. *See Schlobohm,* 784 S.W.2d at 358. Therefore, the court in *Ford* did not include the nonresident's business contacts as part of the due process analysis. In this case, the father's trips, when taken as a whole, are sufficient to establish minimum contacts with Texas.

Second, the Texas court's assertion of personal jurisdiction comports with fair play and substantial justice. The burden on the father of adjudicating the suit in Texas is not an extremely heavy one. Although there are many miles between Texas and Minnesota, modern transportation and communication have made it much less burdensome for a party sued to defend himself in a state where he has minimum contacts. *See generally McGee v. International Life Insurance Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957). Moreover, the father's repeated trips to Texas indicate that traveling to this state does not present an undue hardship on him. Additionally, Texas has asserted its particularized interest in adjudicating child support by enacting a special jurisdictional statute. *See* TEX.FAM.CODE ANN. § 11.051

(Vernon 1986); *see also Kulko,* 436 U.S. at 98, 98 S.Ct. at 1700. Finally, Texas has a vital interest in protecting the rights of children within its borders and providing for their support. For these reasons, we hold that the Texas court's exercise of jurisdiction comports with fair play and substantial justice.

## IV. JURISDICTION OVER CUSTODY AND VISITATION

The UCCJA creates a system of concurrent jurisdiction in custody determinations. That is, two states may have subject matter jurisdiction to modify custody of the same children. This is true in the instant case. Because the children lived in Texas for a period in excess of six months before the proceedings in question, Texas is their "home state" under the Texas UCCJA and has acquired subject matter jurisdiction over the children's status. TEX. FAM.CODE ANN. §§ 11.52(5), 11.53. Minnesota also had subject matter jurisdiction over the original custody determination made in the 1986 divorce decree and continues to have jurisdiction concerning the custody of the children. MINN.STAT.ANN. § 518A.03 (West 1990). Therefore, Texas and Minnesota have concurrent jurisdiction over the same child custody question.

In order to prevent jurisdictional conflicts and competition over child custody, the United States Congress passed the Parental Kidnapping Prevention Act of 1980 (PKPA), 28 U.S.C.A. § 1738A (West Supp. 1990). The PKPA requires every state to give full faith and credit to child custody determinations of other states. 28 U.S.C.A. § 1738A(a). However, the PKPA provides that:

A court of a State may modify a determination of the custody of the same child made by a court of another State, if

(1) it has jurisdiction to make such a child custody determination; and

(2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.

28 U.S.C.A. § 1738A(f). In case of any conflict, the PKPA takes precedence over state law.

The court of appeals rejected the mother's argument that the Minnesota court declined to exercise its jurisdiction. The mother bases her argument on the April 5, 1990 order rendered by the Minnesota trial court while this case was pending before the Texas court of appeals. The Minnesota order states:

### CONCLUSIONS OF LAW

1. This Court has jurisdiction over all dissolution matters, including child support and visitation expenses.
2. This Court has continuing jurisdiction over child custody and visitation based on the children's best interests pursuant to Minnesota's version of the Uniform Child Custody Jurisdiction Act.
3. Minnesota is not an inconvenient forum.
4. This Court will decline to exercise its jurisdiction over child custody and visitation if Texas insists on exercising jurisdiction pursuant to an appellate court decision.

IT IS HEREBY ORDERED:

1. [The father's] motion for this Court to exercise jurisdiction is granted with respect to child support and visitation expenses and partially granted with respect to child custody and visitation.
2. [The mother's] motion for this Court to decline jurisdiction is granted with respect to child custody and visitation issues if an appellate court rules this Court should not be exercising jurisdiction.
3. [The father] shall provide the Texas Court of Appeals and District Court with a copy of this Order and Memorandum.

The court of appeals determined that, although the Minnesota court appeared to decline jurisdiction in paragraph 4 of the above conclusions of law and paragraph 2 of the decree, when considered as a whole, the order did not decline jurisdiction within the meaning of the PKPA. Instead, the court of appeals concluded, those recitations were only a "praiseworthy attempt" by that Minnesota court to shorten the "period of uncertainty" by deferring to the Texas court of appeals' decision. 798 S.W.2d at 297. We disagree.

In its order, the Minnesota court recognizes that it has jurisdiction over all dissolution matters, i.e., child support, visitation expenses, child custody and visitation. The order, however, *asserts* jurisdiction only over child support and visitation expenses, those matters for which "minimum contacts" are required. The Minnesota court declines to exercise its subject matter jurisdiction over custody and visitation.

Our view is supported by the Minnesota court of appeals' opinion in the appeal of the April 1990 order. That opinion was issued following the Texas court of appeals' disposition of the case. The Minnesota court of appeals affirmed the Minnesota trial court's order and held that, if no appeal was taken from the Texas court of appeals' judgment, or this Court upheld the court of appeals, Minnesota would exercise jurisdiction over custody and visitation issues to assure that a "jurisdictional vacuum" would not occur. The Minnesota court went on to hold that if this Court affirmed the Texas trial court's exercise of jurisdiction over child custody and visitation, Minnesota "will *continue to decline* to exercise the jurisdiction it has over these issues." (emphasis added). In interpreting the actions of the Minnesota trial court, we respect the determination made by the Minnesota court of appeals that the trial court had declined to exercise jurisdiction over custody and visitation.

This case presents the difficulties inherent in the resolution of all interstate custody disputes. The cooperation of the Minnesota court of appeals has allowed us to resolve the jurisdictional questions with careful regard for the rights of the parties and the best interests of the children.

Because we determine that Minnesota has declined to exercise its jurisdiction over custody and visitation matters, the Texas court's exercise of jurisdiction over custody and visitation was proper under the PKPA.

## V. CONCLUSION

For the above reasons we affirm in part and reverse in part the judgment of the court of appeals. We hold that the trial court could exercise jurisdiction to modify the Minnesota decree as it related to child support, visitation expense, custody and visitation. The court of appeals determined that the trial court could not properly exercise jurisdiction over visitation and custody and, therefore, did not address the merits of the trial court's order modifying these aspects of the Minnesota decree. Because the father properly challenged the trial court's modification of visitation and custody, we remand this cause to the court of appeals so that it may address the merits of the father's challenges to the modification order.

Concurring and Dissenting Opinion by HECHT, J., joined by PHILLIPS, C.J., and CORNYN, J.

Dissenting Opinion by GONZALEZ, J.

HECHT, Justice, joined by PHILLIPS, Chief Justice, and CORNYN, Justice, concurring in part and dissenting in part.

I agree with the Court that the district court properly exercised its jurisdiction to modify the provisions of the parties' Minnesota divorce decree concerning custody and visitation. I do not agree, however—although it is a close question—that the district court had personal jurisdiction over the father, who still resides in Minnesota, to modify the provisions of the decree relating to support and payment of visitation expense. I therefore respectfully dissent from Parts III.B and V of the Court's opinion but concur in the remainder of it. I would reverse the judgment of the court of appeals in its entirety and remand the case to that court for consideration of other points raised by the father.

The father's only contacts with Texas were his visits to his children in Amarillo and his inquiries on some of those visits concerning employment there. For a Texas court to exercise specific personal jurisdiction over the father, the mother's cause of action must arise out of or relate to his contacts with Texas. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays*, 815 S.W.2d 223, 227 (Tex.1991); *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 413–414, 104 S.Ct. 1868, 1871–72, 80 L.Ed.2d 404 (1984). While the mother's action to modify the father's support obligation does not arise out of his visits to the children here, the action and the visits are not completely unrelated. The relationship between them, however, is not sufficient for specific personal jurisdiction over the father. If it were, Texas would have jurisdiction over the father if he visited his children here but not if they went to Minnesota for visits. To avoid being compelled to come to Texas to litigate, the father would be encouraged to insist upon visitation in Minnesota, despite any inconvenience of that journey to the mother and the children. He might even be discouraged from visiting his children as frequently or at all. I share the concern expressed in Part II of JUSTICE GONZALEZ' dissent that a parent should not be forced to choose between not visiting his or her children and submitting to the jurisdiction of their home state. This concern has led most courts to refuse to hold that visits to one's children alone constitute sufficient minimum contacts for the exercise of personal jurisdiction. *Compare Cunningham v. Cunningham*, 719 S.W.2d 224, 228 (Tex.App.—Dallas 1986, writ dism'd w.o.j.) (attempting to visit child on one occasion); *Ford v. Durham*, 624 S.W.2d 737, 740 (Tex.Civ.App.—Fort Worth 1981, writ dism'd w.o.j.) (per curiam) (visiting child on several occasions, taking child to football game, and returning child after summer visitation); *Minkoff v. Abrams*, 539 So.2d 306, 308 (Ala.Civ.App.1988) (visiting children for four days and picking up children on three other occasions); *St. Hilaire v. St. Hilaire*, 581 A.2d 752, 756 (Conn.Super.Ct.1990) (attending children's school, recreational and sports activities and transporting children in and out of state when exercising right to visitation); *Miller v. Kite* 313 N.C. 474, 329 S.E.2d 663, 667 (1985) (visiting child approximately six times); *Buck v. Heavner*, 93 N.C.App. 142, 377 S.E.2d 75, 79 (1989) (making trips for visitation); *In the Matter*

*of the Marriage of Van Acker*, 97 Or.App. 343, 775 P.2d 921, 922 (1989) (taking children to a picnic at a relative's house on one occasion while exercising visitation rights); *with Wells v. Wells*, 533 So.2d 606, 608 (Ala.Civ.App.1987) (stayed at ex-wife's house when came to visit the children); *Duehring v. Vasquez*, 490 So.2d 667, 673 (La.Ct.App.1986) (entered the state four times to visit with his child); *McCarthy v. McCarthy*, 146 Wis.2d 510, 431 N.W.2d 706, 708 (Ct.App.1988) (visited children during two holiday periods and during one unanticipated trip).[1]

The Court does not hold that visitation alone constitutes minimum contacts for the exercise of personal jurisdiction. *Ante*, at 86 n. 2. The additional contact which the Court does find to be sufficient is the father's "continuing job search" in Texas. *Id.* This additional contact, by itself and apart from visitation, is also not sufficient enough for jurisdiction. I doubt whether the Court would hold in any other context that the father's two casual inquiries concerning employment in Amarillo were the substantial, continuous and systematic activity necessary for general personal jurisdiction. *Guardian Royal*, 815 S.W.2d at 228; *Helicopteros*, 466 U.S. at 414–416, 104 S.Ct. at 1868–1873. The assertion of jurisdiction in this case appears to be based upon the father's visitation combined with his employment inquiries. I would not hold these combined contacts sufficient.

Moreover, I disagree with the Court that the district court's exercise of personal jurisdiction over the father comports with fair play and substantial justice. The Court holds that the inconvenience to the father in having to litigate in Texas is outweighed by Texas' interest in assuring that he provides adequate support for his children. The same issue has been addressed in very similar circumstances by the United States Supreme Court in *Kulko v. Superior Court of California*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978), which the Court cites but does not follow. In that case, Ezra and Sharon Kulko, both residents of New York, were married in California while Ezra was on a brief layover on his way to Korea for military duty. When he completed that duty, Ezra returned to New York, where he and his wife lived continuously for several years, and where their two children were born and raised. The Kulkos eventually divorced, and Sharon moved to California. Sometime later both children joined her, but Ezra remained in New York. Sharon sued Ezra in California to increase the amount of his child support. The California Supreme Court upheld personal jurisdiction over Ezra. The United States Supreme Court reversed. In considering the issue of fairness to Ezra, the Court considered the same factors which are present in this case. Concerning the burden on Ezra, the Court held that "basic considerations of fairness point decisively in favor of [New York] as the proper forum for adjudication of this case, whatever the merits of [Sharon's] underlying claim. It is [Ezra] who has remained in the State of the marital domicile, whereas it is [Sharon] who has moved across the continent." *Id.* at 97, 98 S.Ct. at 1699. Concerning California's interest in providing for the support of children living within its borders, the Court held that that interest was already fully served by the Revised Uniform Reciprocal Enforcement of Support Act, which allowed Sharon to file suit in California and have it adjudicated in New York without either she or Ezra being required to leave their respective places of residence. The burden on a Minnesota father in having to litigate in Texas is similar to the burden on a New York father in having to litigate in California. The Revised Uniform Reciprocal Enforcement of Support Act, adopted in California, has also been adopted in Texas. TEX.FAM.CODE §§ 21.01–21.43. The factors in determining whether the exercise of personal jurisdiction comports with fair play and substan-

---

1. The Court cites *Crockett v. Crockett*, 589 S.W.2d 759, 762 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r.e.) for the proposition that "visits to the children in Texas may establish minimum contacts with Texas"; however, visitation was only one of seven contacts with the state that the court considered in *Crockett*. The court held that all seven of those contacts taken together were sufficient minimum contacts to establish personal jurisdiction.

tial justice are essentially the same in this case as in *Kulko*. I would reach the same result. The Court does not explain why it does not.

I would hold that the father did not have sufficient contacts with Texas for our courts to exercise personal jurisdiction over him. I would also hold that that exercise is not fundamentally fair or just. I would therefore conclude, as JUSTICE GONZALEZ does, that the district court's exercise of personal jurisdiction over the father to modify his support obligation violated his right to due process under the Fourteenth Amendment to the United States Constitution.

The district court's exercise of jurisdiction over the father appears to be of little significance in this case. The district court modified the father's support obligation in the Minnesota decree in the same way that the Minnesota court had already modified that obligation. Thus, the father's obligation is now the same under both the Texas judgment and the Minnesota judgment. Since the father resides in Minnesota, and there is no suggestion that he has any property in Texas, it seems that the mother would most likely enforce the Minnesota judgment, if necessary, rather than the Texas judgment. Thus, the Court has gone out of its way to exercise jurisdiction over a nonresident when it appears to be unnecessary. For this additional reason I respectfully dissent.

GONZALEZ, Justice, dissenting.

This case turns on two questions. First, did Minnesota decline to exercise jurisdiction over the dispute? And second, did sufficient minimum contacts exist for the Texas court to exercise personal jurisdiction over an out-of-state parent who merely visited our state to see his children? The answer to both questions must be "yes" in order for today's opinion to stand. Con-

flicting language from the Minnesota courts' decisions clouds the answer to the first question. The trial court conditionally declined to exercise jurisdiction, but the appellate court characterized that action as a declination. Nothing, however, obscures the answer to the second question. Federal constitutional requirements of due process should lead us to no other conclusion but that the assertion of personal jurisdiction over the visiting parent by Texas is unreasonable.

The states of Minnesota and Texas have concurrent jurisdiction over the custody, support and visitation of the children. After a hearing, a Minnesota trial court concluded that it was a convenient forum to resolve the dispute between the parties.[1] The Minnesota trial court recognized the potential for conflicting orders in this case and wisely decided to *defer* exercising jurisdiction over these issues to ascertain whether Texas would *insist* on exercising its own jurisdiction over this case. A Texas intermediate court of appeals reviewed this matter and, in my opinion, correctly concluded that Minnesota *had deferred* rather than declined jurisdiction within the meaning of the Parental Kidnapping Prevention Act, 28 U.S.C. § 1738A. 798 S.W.2d. at 297. Our Court disagrees and holds that Minnesota declined jurisdiction. More egregiously, our Court implies that any parent who comes to Texas to visit his or her children and consults the "want ads" or stops by the Employment Office while on one of these visitation trips has engaged in sufficient "minimum contacts" to become subject to the personal jurisdiction of Texas courts. All of this gives new meaning to the phrase: "Don't mess with Texas!" I dissent.

## I. CUSTODY AND VISITATION

The Court acknowledges that Minnesota has subject matter jurisdiction over these

1. The following factors show that the parties have substantial contacts in Minnesota: (1) the parties were married in Minnesota; (2) they lived in Minnesota until their divorce; (3) the children of the marriage were born in Minnesota; (4) the children have relatives in Minnesota; (5) the father lives in Minnesota; and (6) his family and friends who would testify on his behalf live in Minnesota. The parties *stipulated* that Minnesota would retain jurisdiction over all issues dealing with custody, visitation and support as long as one of the parents resided in Minnesota.

same issues and does not dispute the finding by the Minnesota trial court that these issues could be conveniently resolved in Minnesota. Nonetheless, our Court holds that Texas courts have jurisdiction over the child custody and visitation issues in this case under the Texas Uniform Child Custody Jurisdiction Act (UCCJA), Tex.Fam. Code § 11.51 et seq. (1992), and the Parental Kidnapping Prevention Act of 1980 (PKPA), 28 U.S.C. § 1738A. At 87. While I agree that Texas courts have jurisdiction over these issues under the UCCJA, I disagree with our Court's interpretation and application of the Parental Kidnapping Prevention Act.

The PKPA provides that:

A court of a State may modify a determination of the custody of the same child made by a court of another State, if—

(1) it has jurisdiction to make such a child custody determination; and

(2) the court of the other State no longer has jurisdiction, *or it has declined to exercise such jurisdiction* to modify such determination.

28 U.S.C. § 1738A(f) (emphasis added). The Court concludes that Minnesota declined jurisdiction; therefore, Texas may properly exercise jurisdiction to modify the child custody and visitation rights. At 89. Because Minnesota did not unconditionally decline to exercise jurisdiction over these issues, I disagree.

The Minnesota trial court entered an "Order *Retaining* Jurisdiction." It stated in its conclusions of law that:

1. This Court has jurisdiction over all dissolution matters, including child support and visitation expenses.

2. This Court has *continuing jurisdiction* over child custody and visitation based on the children's best interests pursuant to Minnesota's version of

the Uniform Child Custody Jurisdiction Act.

\* \* \* \* \* \*

4. This Court will decline to exercise its jurisdiction over child custody and visitation *if* Texas insists on exercising jurisdiction pursuant to an appellate court decision.[2]

(emphasis added).

In an unpublished opinion, the Minnesota court of appeals stated that, "[w]e affirm with the understanding that the [Minnesota] trial court will ascertain the ultimate resolution of custody and visitation issues in Texas. If no further appeal is sought [in Texas] within the time permitted, or if, upon appeal, the Texas Supreme Court upholds the Texas Court of Appeals, Minnesota *shall exercise jurisdiction* of custody and visitation issues to assure that a jurisdictional vacuum does not occur." (emphasis added).

By the terms of the PKPA, the necessary predicate for Texas to exercise jurisdiction over this suit is for the Minnesota court to unconditionally *decline* to exercise jurisdiction. In my opinion, the Texas court of appeals correctly determined that the recitations in the Minnesota trial court were "a praiseworthy attempt by that court to shorten the present period of uncertainty by deferring to our decision as to the legal ramifications in this case." 798 S.W.2d at 297. Because the Minnesota court did not decline to exercise jurisdiction over the child support, custody, visitation, and visitation expense issues, Texas does not have jurisdiction over these issues.

## II. SUPPORT AND VISITATION

I agree with our Court that "a valid judgment for child support or visitation expenses may be rendered only by a court having jurisdiction over the person of the defendant." At 83. Therefore, in order

---

**2.** In the Minnesota trial court's memorandum of facts accompanying the order retaining jurisdiction, the trial judge noted that "Minnesota requires a formal action rejecting jurisdiction by the state with continuing jurisdiction before Minnesota will modify that state's custody decree or order." The findings state that "this

Court will not exercise its jurisdiction over child custody and visitation rights if Texas continues to exercise jurisdiction pursuant to an appellate court decision.... Until that time, however, this Court *will continue* to exercise its jurisdiction." (emphasis added).

for a Texas court to render a binding judgment on the child support and/or visitation expense issues, minimum contacts must exist. This Court determined that minimum contacts were present because the father made "numerous trips" to Texas to visit his children and "sought employment in Amarillo." At 86. The Court is impressed that the father spent four hours with doctors in the Amarillo Diagnostic Clinic and made an inquiry about job openings. The Court also places significance on the fact that the father "spent two hours making the rounds with another doctor at the clinic." At 86.[3] In my opinion, these are insufficient contacts to confer personal jurisdiction to Texas courts over the father.

In *Mitchim v. Mitchim*, 518 S.W.2d 362, 366 (Tex.1975), we held that even though a state may exercise jurisdiction over a cause, the assumption of personal jurisdiction over a nonresident defendant must not offend that defendant's due process rights. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). In *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958), the United States Supreme Court stated that there must be some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state, thereby invoking the benefits and protections of its laws. Minimum contacts with the forum state are required so that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158. An essential criterion in all cases is whether the quality and nature of the defendant's activity is such that it is reasonable and fair to require him to conduct his defense in that state. *Kulko v. Superior Court of California*, 436 U.S. 84, 92, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132 (1978).

In *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 230 (Tex.1991), this Court clarified the personal jurisdiction formula to "ensure compliance with federal constitutional requirements of due process." We stated that "[g]eneral jurisdiction may be asserted when the cause of action does not arise from or relate to the nonresident defendant's purposeful conduct within the forum state but there are **continuous and systematic** contacts between the nonresident defendant and the forum state." *Id.* at 228 (citing *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414–16, 104 S.Ct. 1868, 1872–73, 80 L.Ed.2d 404 (1984)). (emphasis added). Furthermore, when general jurisdiction is alleged, "the minimum contacts analysis is more demanding and requires a showing of *substantial activity* in the forum state." *Id.* (emphasis added). Therefore, in order for Texas to properly exercise personal jurisdiction over the father, he must have "purposefully established minimum contacts" with Texas. *Id.* Additionally, the assertion of personal jurisdiction must "comport with fair play and substantial justice." *Id.* at 231.

It is undisputed that the father's main purpose for coming to Texas was to visit his children. The fact that he made a job inquiry, in my view, does not alter the primary purpose of the visits—to see his children.

The act of visiting children pursuant to a child visitation agreement should not subject a parent to the jurisdiction of the state in which the custodial parent decides to reside. To find personal jurisdiction in a State merely because the custodial parent was residing there, would discourage parents from entering into reasonable visitation agreements. This result "would discourage voluntary child custody agreements and subject a non-custodial parent to suit in any jurisdiction where the custodial parent chose to reside." *Miller v. Kite*, 313 N.C. 474, 329 S.E.2d 663, 666 (1985) (citing *Kulko*, 436 U.S. at 93, 98 S.Ct. at

---

**3.** The father testified that he did not "formally even begin an application process for a job ... [and that] there is no formal effort underway for [seeking] employment [in Amarillo]." He stated that he "merely checked out the possibility of what the quality of the job would be." Furthermore, on the other contact which the court finds significant, the father merely "watched" as he accompanied another doctor making his rounds.

**94** 

1697). Furthermore, "a parent would be faced with the dilemma of visiting the child and subjecting himself to the jurisdiction of the forum state or refraining from such contacts with the child due to the fear of being forced to litigate there." *Miller,* 329 S.E.2d at 667. "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Hanson* 357 U.S. at 253, 78 S.Ct. at 1239–40.[4]

In my opinion, Texas cannot properly assert personal jurisdiction over the father, because he did not establish continuous or systematic contacts with Texas in order to meet the minimum contact requirement set forth in *Guardian Royal.* Furthermore, the exercise of personal jurisdiction fails to meet the second requirement of *Guardian Royal* because such exercise does not comport with fair play or substantial justice.

## CONCLUSION

Because the Minnesota court did not unconditionally decline to exercise its jurisdiction over the suit, but merely deferred the exercise of its jurisdiction pending the resolution of the Texas case, Texas cannot properly assert jurisdiction over the child custody and visitation issues under the PKPA. Furthermore, because the father has not established minimum contacts with Texas, Texas should not assert personal jurisdiction over him. Finally, there is absolutely no reason for Texas to insist on exercising jurisdiction over this case; in the future, some of our sister states may not

be as accommodating. In the long run, it is the children who will suffer.

4. Other states have also held that a noncustodial parent's exercise of visitation rights does not subject that parent to in personam jurisdiction. *See Minkoff v. Abrams,* 539 So.2d 306 (Ala.Civ. App.1988) (court found that minimum contacts did not exist although father traveled to Alabama and remained for four days and thereafter traveled to Alabama three times to bring his children to Georgia pursuant to his visitation rights); *St. Hilaire v. St. Hilaire,* 41 Conn.Sup. 429, 581 A.2d 752 (1990) (fact that father entered Connecticut to pick up and return children during visitation periods along with attending the children's dance recitals, graduations, school and sports activities in Connecticut was insufficient to establish minimum contacts

with the state); *Buck v. Heavner,* 93 N.C.App. 142, 377 S.E.2d 75 (1989) (the exercise of personal jurisdiction on the basis of child visitation violated due process because "the fact that a defendant makes trips to North Carolina in order to exercise his visitation rights cannot supply the necessary minimum contacts for the purposes of a child support action"); *Roderick v. Roderick,* 776 S.W.2d 533 (Tenn.Ct.App.1989) (court held that even if fact that father traveled to Tennessee to exercise visitation rights along with the fact that he was married in Tennessee and once held a Tennessee driver's license were proven, "they do not warrant requiring [the father] to defend himself in Tennessee's courts").