Affirmed as Modified and Opinion filed October 31, 2002
















Affirmed as
Modified and Opinion filed October 31, 2002.

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-02-00368-CV

_______________

 

SCOTT AMARAL,
Appellant

 

V.

 

JEFF AND MELISSA STEELE, Appellees

______________________________________________

 

On Appeal from
the 189th District Court

Harris County, Texas

Trial Court
Cause No. 00-14641

______________________________________________

 

O P I N I O N

 

            Scott Amaral
appeals the denial of his motion to dismiss for lack of personal jurisdiction
(the “motion”) on the ground that there is insufficient evidence to support the
exercise of personal jurisdiction over him. 
We affirm as modified.

                                                            Standard of Review

            A plaintiff has the initial burden
of pleading sufficient allegations to bring a nonresident defendant within the
provisions of the Texas long-arm
statute.  Am. Type Culture Collection, Inc. v. Coleman, 83 S.W.3d 801, 807 (Tex.
2002).  In a special appearance
proceeding, the nonresident defendant then generally bears the burden of
negating all bases of personal jurisdiction alleged by the plaintiff.  Id.  Whether a court has personal jurisdiction
over a defendant is a question of law.  Id. at
805-06.  In resolving this question of
law, the trial court must frequently resolve questions of fact.  Id. at
806.  Therefore, on appeal, a trial
court’s decision to grant or deny a special appearance is subject to de novo review, but its implied findings
of fact supporting that decision may be challenged for legal and factual
sufficiency.  See id.; BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d
789, 795 (Tex. 2002). 

                                                          Personal Jurisdiction

            Amaral’s
sole issue in this appeal argues that there is no evidence in the record that
he had sufficient minimum contacts with Texas to warrant
a finding of either specific or general jurisdiction.[1]  In reviewing a no evidence claim, we view the
evidence in the light that tends to support the disputed fact finding and
disregard all evidence and inferences to the contrary.  Minyard Food Stores,
Inc. v. Goodman, 80 S.W.3d 573, 577 (Tex.
2002).  If more than a scintilla of
evidence exists, it is legally sufficient. 
Id.  More than a scintilla of evidence exists if
the evidence furnishes a basis for reasonable minds to differ about the
disputed fact’s existence.  See id.

            A Texas court may exercise jurisdiction
over a nonresident if: (1) the nonresident is “doing business” in the State
within the meaning of the Texas “long-arm” statute;[2] and (2)
the exercise of jurisdiction is consistent with constitutional due process
guarantees.  Coleman, 83 S.W.3d at 806. 
Because the broad definition of “doing business” extends the reach of
the long-arm statute as far as federal constitutional due process will allow, the doing business requirement is
satisfied if the due process requirement is met [3] and thus
need not be considered separately from it.

            In order for a court’s assertion of
jurisdiction over a nonresident defendant to comport with due process, (1) the
defendant must have purposefully established minimum contacts with the forum
state such that it could reasonably anticipate being sued in that state; and
(2) the exercise of jurisdiction must comport with fair play and substantial
justice.[4]  Id.  A defendant is not subject to jurisdiction if
its contacts with the State are random, fortuitous, or attenuated; rather, the
minimum contacts analysis requires that a defendant has purposefully availed
itself of the privilege of conducting activities within the State, thus
invoking the benefits and protections of its laws.  Id.

            A
defendant’s contacts with a forum state can give rise to either general or
specific jurisdiction.  Id.  General jurisdiction exists where the
defendant has had continuous and systematic contacts with the forum state, even
if the cause of action did not arise from the defendant’s purposeful conduct in
that state.  Id. at
806-07.  Conversely, specific
jurisdiction is established where the defendant’s contacts with the forum are
purposeful and the cause of action arises from, or relates to, those contacts.  Id. at
806.  Specific jurisdiction involves a
less demanding minimum contacts analysis than general jurisdiction.  See id.
at 807.

            In this case, the Steeles’ petition alleged premises liability against Amaral in the capacities of: (1) sole proprietor of Rio
Bravo Motocross Park (“Rio Bravo”), the business that allegedly operated or
controlled the property (the “property”) on which the injury occurred on March
21, 1998; and (2) alter ego of S.E.A. Leasing, Inc. (“S.E.A.”), the corporation
that allegedly owned the property at that time.

                                                                      Alter Ego

            Contrary to the general rule, cited
above, that a nonresident defendant has the burden to negate all bases for
personal jurisdiction, the Texas Supreme Court has held that jurisdiction based
on an alter ego theory cannot be found in the absence of evidence supporting
the alter ego assertions.  See BMC,
83 S.W.3d at 798-99.  Although this
holding was reached in the context of a parent and subsidiary corporation, it
was based on the presumption of separate identity between such corporations.  Because the same presumption exists with
regard to a corporation and its non-corporate shareholders,[5] it
logically follows that the rule would also apply to an assertion of
jurisdiction based on alter ego with regard to a non-corporate
shareholder.  Therefore, we conclude that
jurisdiction could only be asserted in this case against Amaral
in his alleged capacity as the alter ego of S.E.A. if there was evidence to
support the alter ego allegations.

            Under the alter ego theory, the
separate legal identity of a corporation and its shareholder is disregarded
where there is such unity between them that they cease to be separate and
holding only the corporation liable would result in injustice.  Mancorp, Inc. v.
Culpepper, 802 S.W.2d 226, 228 (Tex. 1990); Castleberry v. Branscum,
721 S.W.2d 270, 272 (Tex.
1986).  Alter ego is shown from the total
dealings of the corporation and the shareholder, including the degree to which
corporate formalities have been followed and corporate and individual property
have been kept separate, the amount of financial interest, ownership, and
control the individual maintains over the corporation, and whether the
corporation has been used for the shareholder’s personal purposes.  Mancorp, 802 S.W.2d at 228.

            In this case, the Steeles’ petition does not contain any specific factual
allegations to delineate their alter ego claim. 
Although their response to the motion asserted that Amaral
was the sole shareholder of S.E.A. and controlled the corporation, such facts
alone, even if supported by evidence, would not show alter ego.[6]  Nor do we find any evidence to support any
indicia of alter ego in the record or cited in the Steeles’
brief.  Lacking such evidence, there was
no basis to exercise jurisdiction over Amaral on an
alter ego theory, and his challenge to the denial of the motion is sustained to
that extent.

                                                                Sole Proprietor

            With regard to the exercise of
jurisdiction over Amaral in his alleged capacity as
sole proprietor of Rio Bravo,[7] it was Amaral’s burden to negate that ground.  The evidence in our record includes, among
other things, the following: (1) an assumed name certificate in which Amaral registered Rio Bravo as his
sole proprietorship in Harris County in 1996;[8] and
(2) a power of attorney dated March 3,
 1998, in which Amaral authorized Albert
Amaral to act on his behalf in managing Rio Bravo.[9]  Because Amaral
presented no evidence that he had ceased to be the sole proprietor of Rio Bravo
at the time of the alleged injury[10] or
to otherwise negate the exercise of specific jurisdiction over him in his
capacity as the alleged owner of Rio Bravo,[11] his
challenge to the denial of the motion is overruled with regard to jurisdiction
over him in that capacity.  Accordingly,
the trial court’s judgment denying Amaral’s motion to
dismiss for lack of personal jurisdiction is: (1) modified to remove the
exercise of jurisdiction over Amaral in his alleged
capacity as the alter ego of S.E.A.; and (2) affirmed as to the exercise of
jurisdiction over Amaral in his alleged capacity as
sole proprietor of Rio Bravo.

 

                                                                        /s/        Richard H. Edelman

                                                                                    Justice

 

Judgment
rendered and Opinion filed October
 31, 2002.

Panel
consists of Justices Edelman, Seymore, and Guzman.

Do
Not Publish — Tex. R. App. P.
47.3(b).











[1]           In particular, Amaral
asserts that the record does not contain any evidence of Amaral:
(1) doing business in Texas; (2) entering into a contract with a Texas
resident; (3) committing a tort in the forum state; or (4) engaging in any
culpable act with reasonably foreseeable consequences within the borders of
Texas; nor did the Steeles allege sufficient minimum
contacts in their pleading to support a finding of personal jurisdiction.  Instead, Amaral
contends that the evidence reflects that he: (1) has been a resident of
Colorado since well before the alleged injury; (2) surrendered his Texas
driver’s license and residency when he gained residency in Colorado; and (3)
has been employed full time in Colorado.





[2]           In addition to other, unspecified
acts, the long-arm statute defines “doing business” to include: (1) contracting
by mail or otherwise with a Texas resident if either party is to perform the
contract in whole or in part in this State; (2) committing a tort in whole or
in part in this State; or (3) recruiting Texas residents, directly or through
an intermediary located in this State, for employment inside or outside this
State.  See Tex. Civ.
Prac. & Rem. Code Ann.
§ 17.042 (Vernon 1997).





[3]           See Coleman, 83 S.W.3d
at 806.





[4]           To invoke the fair play and
substantial justice prong of the due process requirement, a nonresident
defendant must present a compelling case that the exercise of jurisdiction over
it would be unreasonable.  In re S.A.V., 837 S.W.2d 80, 85 (Tex.
1992).  The factors to be considered
include: (1) the burden on the defendant; (2) the interests of the forum state
in adjudicating the dispute; (3) the plaintiff’s interest in obtaining
convenient and effective relief; (4) the interstate judicial system’s interest
in obtaining the most efficient resolution of controversies; and (5) the shared
interest of the several states in furthering fundamental social policies.  Id. at
86.   However, once minimum contacts are
established, the exercise of jurisdiction will rarely fail to comport with fair
play and substantial justice.  Id.





[5]           See, e.g.,
Grain Dealers Mut. Ins. Co. v. McKee, 943
S.W.2d 455, 458 (Tex. 1997)
(recognizing that a corporation is an entity separate from its shareholders
under Texas law).





[6]           See Grain
Dealers, 943 S.W.2d at 458.





[7]           An unincorporated business, such as
a sole proprietorship, has no legal existence apart from the sole
proprietor.  See Cox v. Thee Evergreen Church, 836 S.W.2d 167, 169 (Tex. 1992).





[8]           See Tex. Bus. & Com. Code Ann. § 36.10
(Vernon 2002) (requiring persons who operate unincorporated businesses to file
assumed name certificates).





[9]           Although the Steeles
alleged that Amaral operated the motocross track
individually until April of 1998 and pursuant to a power of attorney
thereafter, the power of attorney reflects that it was effective March 3, 1998.





[10]          The record contains no evidence,
for example, that Amaral filed a subsequent
certificate showing any change in the status of this sole proprietorship.  See
Tex. Bus. & Com. Code Ann. §§
36.12, 36.14 (Vernon 2002) (requiring new certificate to be filed in the event
of a material change, including change of ownership, and allowing a statement
of abandonment to be filed where a registrant ceases to do business under the
assumed name).





[11]          Because we conclude that Amaral’s contacts with Texas are
sufficient to support specific jurisdiction, we do not address general
jurisdiction.